# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

WHITTEN, &C. V. SAUNDERS, &C.

August 11.

Absent, *Moncure*, P.

1. A debtor possessed of a large tract of land conveys a part of the same by deed of gift to one of his sons, who thereafter sells it to another person for a valuable consideration. The father debtor, then, by subsequent deeds for value. executed at different times, conveys nearly the whole of his said land to different purchasers. On proceedings to subject said land to the payment of a portion of the purchase money, for which the vendor to the debtor had retained his vendor's lien—HELD : The lands will be held liable in the inverse order of the alienations from the debtor, and this, too, although one of the alienees is a purchaser from the son of the debtor, who held under a voluntary conveyance from the debtor.

2. Whilst under our statute a voluntary conveyance, without fraud, is void as to existing creditors, it is void only as to them, and is good as to all others. When, therefore, it is said that a purchaser, with notice, from a voluntary donee, stands in the shoes of such donee and can occupy no higher ground than he, all that is meant is, that he holds subject to the claims of the original donor's creditors, to the same extent as the volunteer donee holds. Such a purchaser cannot be affected by subsequent alienations from the original donor, of which he had no notice, and against which he could not provide.

3. Upon asking leave to file a petition for a rehearing, or bill of review, on the ground of newly-discovered matter, the new matter must be so stated in the bill as to enable the court to see, on inspecting it, that if it had been brought forward it would probably have changed the character of the decree ; and it must be so stated that the defendant can answer it understandingly, and thus present a direct issue to the court. It is not sufficient to say that the party asking the leave expects to prove certain facts. He must state the evidence distinctly on which he relies, and file affidavits of witnesses in support of his averments.

This was a suit in equity in the circuit court of Bedford county, brought in July, 1876, by B. S. Saunders, late sheriff of said county, and as such administrator *de bonis non* with the will annexed of Martha Layne, deceased, against Jesse T. Hopkins, Francis E. Hopkins, Beverly R. Jeter, O. P. Bell, Abraham Haldron, Elisha Whitten, H. H. Chilton, David Gish and R. P. Pace, to subject certain real estate of the defendants to the satisfaction of the complainant's judgment against said Jesse T. Hopkins.

The bill alleges that in the year 1857 Henry Terry, late of said county, sold to said Jesse T. Hopkins a tract of land in said county, containing about 873 acres for $15,000, taking thereafter from said Hopkins five bonds, each for $3,000, and retaining his vendor's lean on the said land as a security for the purchase money; that said Hopkins paid to said Terry in his lifetime the first four of said bonds, and that said Terry assigned the remaining fifth bond for $3,000, payable the 30th of April, 1862, to Martha Layne for value received; that said bond having become lost or misplaced in the hands of said Layne, the said Hopkins executed a duplicate bond to said Terry, on which suit was instituted and judgment obtained, subject to certain credits; that no part of said bond and judgment had been paid except what appears from the credits aforesaid; that said Terry never, by deed or otherwise, conveyed to said Hopkins any title to said land, or authorized said Hopkins to make conveyances of the same to any person whatever; that the complainant, by virtue of his said assignment, has a vendor's lien upon the whole and every part of said land for the satisfaction of his said judgment, with interest and costs; that said Hopkins, without having first satisfied complainant's said judgment and relieved said land of his lien upon it, and without having any title to the same, has sold and conveyed by deeds of gift and sale the whole of said land in separate parcels to the following persons: To Beverly R.

Jeter, by deed of sale, dated 5th January, 1863, one tract of $9\frac{1}{2}$ acres; to Francis E. Hopkins, by deed of gift, dated 19th February, 1863, one tract of $245\frac{1}{2}$ acres; to O. P. Bell, by deed of sale, dated 19th August, 1863, a tract of $234\frac{3}{4}$ acres; to Abraham Haldron, by deed of sale, dated 1st November, 1863, a tract of $72\frac{3}{4}$ acres; and to Elisha Whitten, by deed of sale, dated 10th October, 1864, a tract of $312\frac{3}{7}$ acres; that said Francis E. Hopkins, shortly after receiving this deed from his father, sold the tract conveyed to him to David Gish, and that Gish has since sold the same to R. P. Pace, who has paid the purchase money in part, and is in possession of the land; that O. P. Bell has sold to H. H. Chilton about 100 acres of his purchase, who has paid the purchase money in full, and is in possession.

The bill further alleges that said Jesse T. Hopkins is insolvent and a bankrupt, and has no real estate upon which the complainant's judgment is a lien, beyond his interest in the said Terry tract of land, which is first liable for the satisfaction of said judgment, and charges that the said pretended conveyances from said Jesse T. Hopkins and wife to said B. R. Jeter, Francis E. Hopkins, O. P. Bell, Abraham Haldron and Elisha Whitten, and the conveyance of the said Francis E. Hopkins to said Gish, are fraudulent as to the rights of the complainant, and were made with the full knowledge that the said Jesse T. Hopkins had no legal title to said land, and consequently no right to convey the same to the prejudice of the complainant's said debt. The bill prays that each and all of said conveyances be set aside as fraudulent as to the complanant, and that said tracts of land of the original purchase by the said Jesse T. Hopkins of Henry Terry be subjected to the lien of said judgment, and that the same be paid out of said lands in the order in which they ought in equity to be subjected to the same, and for general relief, &c.

Three amended bills were subsequently filed to supply

proper parties and revive the cause against Jesse T. Hopkins' representatives, he having died pending the litigation.

The bill was demurred to and answered by O. P. Bell and Elisha Whitten. Among other defences, their answers set up as a defence that said Jesse T. Hopkins was really the owner of a tract of forty-nine acres of land still held by him in the name of one of his sons.

At September term, 1878, a decree was rendered refering the cause to a commissioner of the court to take the following accounts: 1. Of the real estate of Jesse T. Hopkins, liable to said judgment; 2. An account of the plaintiff's debt, and of the fund attached in the suit of *Hopkins* v. *Jones*, applicable to the plaintiff's debt; 3. An account of the order in which the Terry lands were liable to be subjected; 4. An account of the administration on said Jesse T. Hopkins' estate.

The commissioner proceeded to execute the said decree and filed his report, to which report the defendants Whitten and Haldron (the appellants here) excepted. The ground of their exceptions was that their co-defendant, Francis E. Hopkins, was a mere volunteer—the land (254½ acres), given to him by his father Jesse T. Hopkins, being reported to be liable to the plaintiff *after* the lands of said exceptants, although there was no valuable consideration whatever for the conveyance between him and his father. And as to the said Haldron, because his (Haldron's) deed was for full value, and was recorded November 4, 1863, while Francis E. Hopkins' deed to Gish was not recorded until November 9, 1863, five days afterwards, and after Francis E. and said Gish had full legal notice of the alienation by said Jesse T. Hopkins to said Haldron.

The cause came on to be heard at March term, 1879, upon the commissioner's report aforesaid, with the exceptions and the depositions of witnesses; whereupon, the court, without making any disposition of the demurrer, overruled

the said exception, and after applying the balance found in the hands of Jesse T. Hopkins' administrator to the plaintiff's debt, decreed the sale of the forty-nine acres of which said Jesse T. Hopkins died seized, and then went on and made a decree *nisi* for the sale of the lands sold and conveyed as aforesaid, to said Whitten and Haldron, respectively, *before* those *given* to his son, Francis E. Hopkins.

At a special term of the court held in June, 1879, the said Whitten and Haldron, and said R. P. Pace, who was alienee of Gish, asked leave to file their bill of review to set aside the decree aforesaid, on the grounds that they had subsequent to the decrees discovered evidence showing that the debt for which the judgment was obtained had been paid, the staleness of the demand, &c., but the distinct character of the evidence of payment was not set out in the bill of review, and leave to file the same was refused. From this and the decree confirming the commissioner's report, Whitten and Haldron appealed.

*L. D. Haymond,* for the appellants.

*Jordan & Claytor,* for Layne's administrator.

*M. P. Burks,* for O. P. Bell.

*Griffin & Lowry,* for Hopkins' administrator.

STAPLES, J., delivered the opinion of the court.

The law is now well settled that where land which is subject to the lien of a judgment or other incumbrance, is sold in parcels to different persons by successive alienations, it is chargeable in the hands of the purchaser in the *inverse* order of such alienations.

This rule is not only established by the decisions of

courts of equity, but in Virginia it is prescribed by statute (*Harman and als.* v. *Oberdorfer and als.*, 33 Gratt. 497, and cases there cited). It is said, however, that this principle cannot be applied in the present case, because Francis E. Hopkins, one of the alienees of Jesse Hopkins, the debtor, is a voluntary donee, and David Gish, who purchased from him, although a purchaser for value, can occupy no higher ground than such donee. Consequently, the land in Gish's hands ought to be charged in preference to the lands of the appellant, a subsequent *bona fide* purchaser from Jesse Hopkins, for value without notice.

At the time Jesse Hopkins conveyed to his son, and at the time the son conveyed to Gish, Jesse Hopkins was still the owner of the lands, afterwards sold by various alienations to the appellant and other purchasers. Had Gish then examined the records, he would have found that the lands thus retained by the grantor were amply sufficient to pay the judgment liens thereon. Having obtained this information, he might, with absolute safety, have purchased from the voluntary donee, subject only to the claims of existing creditors of the original grantor. The doctrine has been maintained by very learned judges that if a father makes a reasonable provision for a son, according to his estate and condition in life, leaving ample property for the payment of his debts, the conveyance is valid against his creditors. By our own law, however, a voluntary conveyance without fraud is void as to existing creditors, but only as to them. It is good between parties, and, indeed, as to all other persons. When, therefore, it is said that a purchaser with notice from a voluntary donee stands in the shoes of the donee, and can occupy no higher ground than such donee, all that is meant is that he holds subject to the claims of the original donor's creditors, to the same extent as the voluntary donee himself holds.

Such a purchase cannot be affected by subsequent aliena-

tions of which he has no notice and against which he can make no provision.

If third persons by such subsequent alienations may gain priority over him, no man will ever be safe in buying from a voluntary donee, although the latter may be clothed with all the *indicia* of a perfect title. If a purchaser from a voluntary donee stands in the shoes of such donee, the same may be said of a subsequent purchaser from the original grantor. If the stream can rise no higher than its source in the one case, neither can it in the other. In *Conrad* v. *Harrison et als.*, 3 Leigh, 544, Judge Tucker said, "If, upon the execution of the deed of trust to them, Harrison and Cravens had this right against Sisson they must have the same right against Conrad, because when Conrad purchased he took seventy-five acres subject to its liability, in the hands of the debtor, in preference to the land already encumbered to Harrison and Craven. He sits, as has been well said, in the seat of his grantor, and must take the land with all its equitable burdens. It cannot be in the power of the debtor by the act of selling the remaining land to discharge it and throw the burden back upon Harrison and Craven. If so, we should have this unheard of state of things, that one man shall lose his rights of property without his fault, or assent, and another shall be enabled to take them away without an equivalent."

These observations of Judge Tucker apply as fully to the case in hand as the one before him. See also *McClung* v. *Beirne*, 10 Leigh, 394; *Clowes* v. *Dickerson*, 5 John. R. 235, 246; *Aldrich* v. *Cooper*, Lead. Cases in Equity, vol. 2, part 1, 293.

We are therefore of opinion the circuit court properly held, that the different parcels of land alienated by Jesse Hopkins are liable to the appellees' judgment in the inverse order of such alienations.

We come next to the question of the legal title. It is

averred in the answer of the appellant that the land in controversy was sold by Mrs. Layne to Henry Terry, but that no conveyance was ever made, and that the legal title is still outstanding in the heirs and devisees of Mrs. Layne, who ought to be made parties before a sale takes place.

No deed or other writing is filed in the record to show that Mrs. Layne ever had any interest in the land. The only proof we have on the subject is a statement of Jesse Hopkins, who states he got the land from Terry, and Terry got it from Mrs. Layne. The learned judge of the court states, however, that Hopkins is mistaken; that Mrs. Layne never owned the land, that it belonged to Terry, to whom it was conveyed by Sophia Jennings and Joseph Meade, by deeds of 1st day of December, 1831, and the 1st day of June, 1835, duly recorded.

No such deeds as these mentioned by the learned judge are in this record.

Considering his well known accuracy, however, it impossible to doubt the correctness of this statement.

At all events, this court, under such a state of facts, cannot reverse the decree for the want of proper parties. If the appellant wishes an inquiry upon the subject of the title, the circuit court may order it, and if it turns out that the legal title is outstanding in Mrs. Layne's heirs or devisees, they must be brought before the court before a sale is made.

It is not necessary, however, as claimed by the appellant, that a deed conveying the legal title shall be actually executed, and tendered or deposited among the papers.

The circuit court, having all the parties before it, may at the proper time direct the title to be conveyed by one of its commissioners to the purchaser.

The next point to be considered is, whether the circuit court committed an error in decreeing a sale of the appellant's land without directing an account of the collaterals

placed in the hands of Messrs. Hensley and Jordan. It was very properly said by the judge of the circuit court that these gentlemen, in receiving the collateral securities, were acting as the attorneys of Hopkins and not of Mrs. Layne. Having in their hands for collection Hopkins' bond due Mrs. Layne, they no doubt received the collaterals for Hopkins with the understanding that the money, when collected, should be applied to the payment of the debt.

There is no pretence of any agreement that Mrs. Layne was to be delayed in the enforcement of her demand until the collaterals could be disposed of. If the attorneys have been remiss in duty, they are liable to Hopkins' representatives, and not to Mrs. Layne's executors.

Hopkins, in his deposition given in 1877, says, a judgment had been recovered upon one of the bonds, but the money had not been realized. Four years have now passed away, and if in the meantime any part of the money due upon the collaterals has been collected, it has, no doubt, been properly applied, or may be hereafter by a proper proceeding in the circuit court; and if not, the parties interested have their remedy against the person in possession of the funds.

It is very certain that the appelless, the executors of Mrs. Layne, cannot be delayed in the enforcement of their liens upon the land by any controversy relating to the collaterals.

Complaint is further made that the circuit court rendered a decree against Jesse Hopkins' administrator for the sum of $278.81, as of first of March, 1879, to be applied to the payment *pro tanto* of the amount due Mrs. Layne's executors. This objection on the part of the appellees is based upon the ground that Hopkins had on the 2d of April, 1872, obtained his discharge in bankruptcy, and by that discharge released from all liability to Mrs. Layne's estate upon the debt in controversy.

This part of the decree was founded upon the principle of marshaling securities. For if the appellant's tract of land is charged with the payment of Mrs. Layne's judgment, the appellant has a right to recover against Hopkins' estate upon the covenant in his deed.

Those covenants are, that the grantor has a right to convey; that he has done no act to encumber the estate; that the grantee shall have quiet possession free from all incumbrances; and the covenant of general warranty.

The two latter covenants are not broken until eviction, which has not yet taken place. When, therefore, Jesse Hopkins went into bankruptcy no right of action had accrued upon these covenants, and *non constat* it ever would accrue.

A covenant of warranty not broken, and which never may be, is clearly not a debt provable in bankruptcy. As long as it remains wholly uncertain whether a contract or engagement will ever give rise to an actual duty or liability, and there are no means of removing the uncertainty by calculation, such contract or engagement is not provable in bankruptcy. Bump on Bank. 510 ; 15 Wallace, 549. The result is, that the appellant being now evicted from the land by title paramount, has a right of recovery against Jesse Hopkins *pro tanto*, and a court of equity having all the parties before it, will end the litigation and do complete justice by compelling Hopkins' administrators to pay directly to the appellees, to the relief of the appellant's land.

These are familiar principles, and need no discussion or authority to sustain them.

Complaint is also made of the refusal of the circuit court to permit the appellants and others to file their bill of review. The decree complained of is an interlocutory decree, and the application of the appellants must therefore be considered a petition for a rehearing. The rules, however, are substantially the same in both cases.

The main question upon which the application rested is the discovery since the decree of sale of new and material evidence showing the payment of the debt to Mrs. Layne in her lifetime. This fact, they aver, they are now able to establish by abundant proof. They also aver that important disclosures have been made to them touching the payment, for which they previously sought in vain.

This is substantially the entire statement with respect to the after-discovered testimony. What is its nature—whether oral or written, what are the disclosures to which reference is made, in what manner and at what time the alleged payment was made, the bill does not inform us.

It is therefore fatally defective as a bill of review or a petition for a rehearing; the rule is that the court must, upon a mere inspection of the bill, be able to see that the new matter discovered is of such a character that if brought forward in the suit it would have probably altered the decree, and it must be so stated that the defendant can answer understandingly and thus present a direct issue to the court. It is not sufficient that the party expects to prove certain facts. He must state the evidence distinctly upon which he relies, and he must file the affidavits of witnesses in support of his averments.

These principles affecting bills of review, or petitions for a rehearing, are well settled by the decrees of the courts everywhere. 2 Daniel Ch. Pl. and Pr. 1579, notes, 4 Amer. Ed.

It is worthy of observation that when the action of law was brought against Jesse Hopkins, he made no defence of payment; and when his deposition was taken in 1877, he did not pretend even then to have paid the judgment, but, on the contrary, claimed to have placed collaterals in the hands of his attorneys sufficient to satisfy the debt.

The allegation in the bill of a payment by some one at some unknown period, was clearly insufficient to warrant such a bill.

The further averment of the staleness of the demand does not require especial notice. The bond fell due in 1862; judgment was recovered in 1868, and the present bill filed in 1876. Surely neither laches nor staleness can be predicated of such a demand.

There are various other grounds set forth in the bill of review or petition, but they have already been noticed elsewhere sufficiently.

Upon the whole case, we think there is no error in the decree, and the same ought to be affirmed.

DECREE AFFIRMED.