## Wytheville.

HATCHER'S PER. REP'S AND ALS V. HATCHER'S HEIRS.

July 26th, 1883.

(Absent, *Fauntleroy, J.*)

1. PRACTICE IN EQUITY—*Bills of review.*—Bill of review must exhibit the proceedings in the cause wherein was rendered the decree sought to be reviewed; and if the decree be final, must, of course, be filed within the statutory period.  Code 1873, ch. 175, section 5.
2. IDEM—*Idem—New matter.*—When founded on new matter, bills of review can only be filed by leave of the court, and must be supported by affidavit satisfying the court that the new matter could not, by reasonable diligence, have been discovered or used before the decree was rendered, and that such matter is relevant and material, and such that, had it been before the court, would probably have occasioned a different decision.
3. IDEM—*Idem—Case at bar.*—The new matter here relied on as the foundation of the bill of review, HELD to be not only wholly irrelevant and immaterial, but also discoverable by ordinary diligence, if not actually known prior to the rendition of the decrees complained of.

Appeal of Margaret Hatcher and Daniel G. Hatcher, personal representatives of David B. Hatcher, deceased, and said Daniel G. Hatcher, in his own right, Charles Dehart, J. F. Moore and W. A. Moore, from decree of circuit court of Floyd county, rendered 23d November, 1882, on the bill of review therein filed 10th March, 1881, by George M. Hatcher and others, against the appellants and others, for the purpose of reviewing and reversing decree entered 15th October, 1879, in the cause styled, "*Hatcher's heirs* v. *Hatcher's administrator.*"  The last mentioned decree confirmed the settlement of the accounts of said personal representatives, including the allowance to them

credit for two payments on a debt of their intestate's estate to John C. Staples, amounting to nearly $4,000. To make these payments, the administratrix, in 1860, borrowed on her individual responsibility money of W. A. Caldwell, and, to repay Caldwell in part, she similarly borrowed money of Israel Lash. Daniel G. Hatcher purchased the judgments Caldwell and Lash obtained against her for the money they loaned her. H. D. Reynolds owed the estate a debt, and in the suit of *Reynolds* v. *Hatcher's administrators, &c.,* land was decreed to be sold to pay that debt. At the sale Daniel G. Hatcher bought the land. In the suit of *Hatcher's heirs* v. *Hatcher's administrators,* the administration accounts were then in process of settlement, and it was ascertained that the estate owed Daniel G. Hatcher, the administrator, more than the price of the Reynolds land. Thereupon, in a decree entered in November, 1877, in the two causes last aforesaid, heard together, the fact of such indebtedness to Daniel G. Hatcher was recited, and the commissioner who made the sale was directed to surrender to him his bonds given for this land, and to execute a deed conveying the land to him; and the cause of *Reynolds* v. *Hatcher's administrator, &c.,* was ordered to be stricken from the docket; all whereof was accordingly done.

The bill of review did not, in terms, pray for the review and reversal of the decree of November, 1877, but only for the review and reversal of the decree of October, 1879; but as the latter confirmed the settlement of the administration accounts, showing the indebtedness of the estate to Daniel G. Hatcher, on the ground of which indebtedness the former decree proceeded in directing the surrender of his bonds and the conveyance to him of the Reynolds land, the bill of review necessarily affected the decree of November, 1877. And accordingly, by the decree of November, 1882, on the bill of review, the circuit court disallowed credit for the two payments made as aforesaid to John C. Staples, but treating the Caldwell and Lash debts as debts due from the estate, allowed credit for the partial payments

made thereon and decreed in favor of Daniel G. Hatcher only for the sum of $985, with interest on $699.66 thereof from 14th September, 1882; but proceeding to reverse the decree of November, 1877, decreed that he had only paid for said land to the extent of said sum decreed him, and that, unless he paid within sixty days the purchase money, $4,000, and its interest, subject to credit for the amount decreed him, the said land be sold.                                                                    •

Before the bill of review was filed, Charles Dehart and others obtained judgments against Daniel G. Hatcher, which were liens on said land, and J. F. Moore and others had a deed of trust thereon; but the equities of the heirs of D. B. Hatcher, deceased, were adjudged by the decree of November, 1882, to be paramount to the equities of the judgment and trust lienors. The remaining facts and proceedings are stated in the opinion of the court.

*J. L. Tompkins, J. E. Penn,* and *J. R. Moore,* for the appellants.

*Whittle & Anderson,* and *A. P. Staples,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

In many of its aspects this case is a very remarkable one. he appellants, the defendants below, demurred to the bill and also answered the same; and in the view taken by this court, while the case must be determined upon the demurrer, yet will, in order to a proper understanding of the conclusion at which the court has arrived, so far first consider the case on its merits, as to show that in no view could a different result be fairly arrived at. The facts and circumstances of the case and the law applicable thereto demand in either view a reversal of the decree of the court below.

David B. Hatcher, of Patrick county, died in April, 1857,

intestate, leaving a widow, Margaret, and eleven children, most of whom were then infants. At his death the decedent was seized and possessed of a very considerable estate, real and personal. The personal estate consisted almost entirely of slaves. Said widow, together with her son, Daniel G. Hatcher, duly administered upon the estate, which was largely indebted, but in an amount by no means equal to the value of the entire estate, real and personal. Several of the most valuable slaves were sold by the administrator, Daniel G. Hatcher (to whom his mother, the said administratrix, left the administration almost entirely) and the proceeds applied to the payment of debts against the estate. This left upon the plantation and homestead the young slaves and some inferior ones, barely able, as disclosed by the record, to earn a support for the large family. It seems that these negroes, not taken charge of by the administrator and sold for the payment of debts with the trifling amount of other personal property on the place, were left there by the common agreement and understanding of the heirs and distributees, including said administratrix and administrator, for the support of the family and the education of the children. In addition, as the older children grew up and married, or settled to themselves, they, by like understanding and common consent, cultivated in parcels certain parts of said homestead, and respectively enjoyed the fruits of their labor. That this arrangement was the very best, under all the surrounding circumstances, which could have been made in the interests of all concerned, cannot be doubted; and that, as between themselves, no one of the heirs and distributees could rightfully complain, is equally true; for in this way the children were reared, educated and cared for, and from time to time, as they grew up and married, received from the common stock thus kept such aid in the way of advancements as could be spared from the common fund or property.

Not very long after the death of D. B. Hatcher, one H. W. Reynolds instituted a suit in equity against said administrator and administratrix and others for the specific execution of a

contract for the sale by the decedent in his life, to him of a certain tract of land; in which suit the contract was executed, and a balance of over $4,000 of purchase money ascertained to be due from said Reynolds, and the land decreed to be sold to pay the same. The land was sold by John E. Penn, commissioner, and Daniel G. Hatcher, in his own right, became the purchaser at four thousand dollars, and executed his bonds for the purchase money to said commissioner, who reported said sale, and the same was confirmed by a decree in said suit pronounced at the November term, 1877, of said circuit court.

Pending said suit of *Reynolds* v. *Hatcher's administrators, &c.,* a portion of the heirs of the decedent instituted a suit in chancery in said circuit court against the said administrator and administratrix charging a *devastavit;* charging that the administrator's bond was worthless; that he was proceeding to collect the amount of purchase money aforesaid due from said Reynolds for said land, and asking that said administrator, Daniel G. Hatcher, be restrained from collecting same, which restraining order was granted. Subsequently the defendant, Daniel G. Hatcher, answered said bill, denying each and every material allegation therein, and especially denying that he had committed any *devastavit,* or had in any way wasted or misappropriated any of the assets which had come into his hands. In this suit an account was ordered and taken, the result of which was that the estate came out largely over $4,000 in debt to said administrator, Daniel G. Hatcher, a sum, too, largely in excess of the purchase price for said Reynolds land, bought by said Hatcher from Commissioner Penn in said first named suit. At the November term, 1877, of said circuit court, this cause came on again to be heard, together with said suit of *Reynolds* v. *Hatcher's representatives,* when a decree was entered confirming the account and report ascertaining said amount due from the estate to said administrator, and directing Commissioner Penn to surrender to said purchaser, Daniel G. Hatcher, his purchase money bonds for said Reynolds land, and further directing said commissioner

to convey said land to said Daniel G. Hatcher; all of which was done, as appears by the record, and said decree struck said cause of *Reynolds* v. *Hatcher's representatives, &c.,* from the docket, the object thereof having been attained. It was thus judicially ascertained that the *devastavit* charged in the bill of *Hatcher's heirs* v. *Hatcher's administrators* was not only groundless, but that, on the contrary, said estate was largely indebted to said administrator for money advanced therefor out of his own private funds. And this result was reached after refusing to allow said administrator credit for taxes on land, medical bills, and other items running through a long period of years, and amounting to over $3,000. Surely, in this view of the case, thus far no one of the heirs could complain justly of said decree, by which said Daniel G. Hatcher was allowed credit for only a little over half of what the estate was justly indebted to him, and that only in part paid by the delivery to him of the bonds which he had executed to said commissioner for the Reynolds land, and the conveyance of same to him. With this result, all parties, except Daniel G. Hatcher, should have been content, and here this litigation should have ceased.

But not so. On the 10th day of March, 1881, over three years after the final decree in said suit of *Reynolds* v. *Hatcher's representatives, &c.,* by leave of the judge of said circuit court, granted in vacation, said plaintiffs in the suit of *Hatcher's heirs* v. *Hatcher's representatives,* filed their bill of review, seeking to review, reverse and annul the settlement and decrees in both of said suits, notwithstanding the final decree in one of them, as before stated, had been rendered more than three years and could not by reason of the statutory limitation be reached by a bill of review. To this bill the defendants, the appellants, demurred and also filed their answers.

After Commissioner Penn's conveyance of the Reynolds land to Daniel G. Hatcher, and prior to the filing of said bill of review, certain creditors of said Hatcher, who had in the meantime become involved, obtained liens against said land, and

brought suit and obtained a decree subjecting said land in the hands of said Hatcher to the payment of said liens, and upon the application of the plaintiffs in the bill of review. an injunction was granted restraining said creditors, and the commissioners appointed for the purpose, from executing said decree, by a sale of the same.

These creditors of Daniel G. Hatcher were made parties defendant to said bill of review, filed their demurrer and answer thereto, and are represented as appellants here.

In the year 1860, said Margaret Hatcher, not in her fiduciary capacity, but in her individual right, together with others, her sureties, made a note on which a loan of $4,000 was obtained from one W. A. Caldwell, of North Carolina. This money was applied to the payment of a debt of $4,000 due from the estate of the decedent to John C. Staples, which debt was in the hands of the sheriff of Patrick, and then being pressed for payment. It is admitted in the bill of review that this was a valid subsisting debt, and that it was discharged with the money so borrowed, and that Daniel G. Hatcher, neither as administrator nor otherwise, had any previous knowledge of, or connection with the borrowing of this money. In 1861, said Margaret Hatcher, with the same parties as her sureties, borrowed the additional sum of $1,200 from one Israel G. Lash, also of the state of North Carolina, one thousand dollars of which was applied to the reduction of said Caldwell debt. With this transaction Daniel G. Hatcher had no connection whatever, he being at the time in the Confederate army. With the money thus borrowed the estate of D. B. Hatcher was relieved of $4,000 of unquestioned indebtedness; and Margaret Hatcher, with her sureties, had incurred a merely personal liability therefor, in no possible way connected with the estate of the decedent. Neither Caldwell nor Lash could make any charge against the estate for the money thus loaned on the personal credit of their said debtors.

Some nine or ten years later, when the slaves remaining, by common consent unappropriated to the payment of the debts of

the decedent, had been freed by the war; and said Daniel G. Hatcher had returned from the war and found himself, as well as others, the victim of the common ruin of the times, and his embarrassment greatly increased by the generous protection and liberality which he had extended to the estate and family of his dead father, he, in looking to his own interests, and in the exercise of his unquestionable right as a man and citizen, became the purchaser and owner of the said debts due from Margaret Hatcher and others to said Caldwell and Lash at, as it appears, about twenty-five cents in the dollar. The transaction was seized upon as unauthorized—charged to have been a fraudulent speculation in the assets which came to his hands to be administered, and was made the foundation for said bill of review. This is substantially the case upon the merits; and while much more might be said, it is useless to push this view further, as the case must, as before stated, turn upon the question whether the bill of review is sufficient in its frame and structure.

In the first place, the bill seeks to review, reverse and annul the final decree in the suit of *Reynolds* v. *Hatcher's administrators*, after the lapse of three years from the rendition of that decree, when the statute (Code 1873, chapter one hundred and seventy-five, section five,) expressly prohibits such a bill after the expiration of said period from the time of the rendition of the decree sought to be reviewed. Moreover, a ·bill of review must state or exhibit to the court the proceedings in the cause in which the decree to be reviewed was rendered. Adams' Equity, 792. In this case only the final decree is brought into the case, so that in the nature of things the court could not proceed intelligently to review the decree complained of even if the bill had been brought in good time.

Again, a bill of review founded, as in this case, on the alleged occurrence or discovery of new matter, must not only be filed by leave of the court, but must be supported by affidavit *satisfying* the court that the new matter could not, by reasonable diligence, have been discovered or used before the decree was made; and showing also the relevancy and materiality of such matter, and

that if previously before the court would probably have occasioned a different decision. Ib. 790; *Whitten* v. *Saunders,* 75 Va. 563; Sand's Suit in Equity, 701, and authorities there cited. In this case, as before stated, the transactions connected with the Caldwell and Lash debts constitute the ground work, the foundation of the bill of review. From the facts disclosed by the record, it is manifest not only that by ordinary diligence these matters could have been discovered, but in all probability were known prior to the rendition of either of the decrees in question. But, however this may be, the alleged new matter was wholly irrelevant and immaterial. The affidavit, as well as the bill on its face was fatally defective; and the demurrer to the bill should have been sustained. However, the cause in the meantime having been removed to the circuit court of Floyd county, came on to be heard in that court on the 23d day of November, 1882, when a final decree was rendered reversing and annulling the decree of November, 1877, made in the suit of *Reynolds* v. *Hatcher's representatives, &c.,* annulling the deed from Penn, commissioner, to Daniel G. Hatcher, made in obedience to said decree; annulling the decree made in 1879, in the suit of *Hatcher's heirs* v. *Hatcher's administrators*; charging Daniel G. Hatcher with the $4,000 purchase money of said Reynolds land, and crediting him with the amounts paid and agreed to be paid for said Caldwell and Lash debts, and some other amounts not necessary to be named; and further declaring an equity in the heirs of D. B. Hatcher prior and superior to the claims of the creditors of Daniel G. Hatcher, as to said Reynolds land: all of which is grossly erroneous and unjust. For these reasons said decree must be reversed and annulled, with costs to the appellants and a decree entered dismissing said bill of review, with costs to the defendants in the court below.

The decree was as follows:

This day came again the parties by their counsel, and the

Decree.

court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that said decree of the circuit court is erroneous in overruling the demurrer to the plaintiff's bill, and that the demurrer to the bill of review ought to have been sustained ; and it is therefore decreed and ordered that the appellants recover against the appellees their costs by them expended in the prosecution of their appeal aforesaid here. And this court proceeding to enter such a decree as the said circuit court should have entered, doth further decree and order that the plaintiff's bill be dismissed, and that the defendants recover against the plaintiffs their costs by them expended in their defence in the said circuit court; and the same is ordered to be certified to the said circuit court of Floyd county.

DECREE REVERSED.