# Richmond.

## LOVETT v. THOMAS' ADM'R AND ALS.

### DECEMBER 17th, 1885.

1. *Fiduciaries—Liability.*—Courts of equity will not hold fiduciaries liable for losses incurred in managing a trust where they acted in good faith, in the exercise of reasonable discretion, and as they would probably have done in their own matters. *Watkins* v. *Stewart,* 78 Va. 111.

2. PERSONAL REPRESENTATIVES—*Liability.*—Administrator is not bound to sue for debt due the estate, when it is apparent that the debtor is unable to pay it. *Mitchell* v. *Trotter,* 7 Gratt. 136.

3. IDEM—*Settlement of accounts—Commissions.*—Failure of personal representative to settle his accounts does not necessarily work forfeiture of commissions. To refuse, or to allow them, rests with the court under the circumstances of each case. And where, under Code 1873, ch. 128, sec. 7, he yearly laid his accounts before the commissioner of accounts, the failure of that officer to audit, state, and report them, cannot lose him his commissions.

4. IDEM—*Annual balances—Interest.*—Where testator directs his executor to manage his farms and distribute the profits among his grandchildren, when of age, the executor should not be charged with compound, but only with simple interest upon the yearly balances left over in his hands, unless testator directed that those balances should be invested in interest-bearing securities. *Creigler* v. *Alexander,* 33 Gratt. 674; *Garrett* v. *Carr,* 1 Rob. R. 196.

5. IDEM—*De minimis non curat lex.*—Case here affords an instance of the application of this maxim.

Appeal from decrees of circuit court of Loudoun county, rendered October 25, 1882, and May 1, 1883, respectively, in the chancery cause of Thomas J. Lovett, complainant, against

Mahlon Thomas, administrator *c. t. a.* of Jefferson C. Thomas, deceased, and others, defendants.

The object of this suit was to construe the will of the testator, and to settle the accounts of his executor and distribute the funds. The decrees of the circuit court were adverse to the complainant, who obtained therefrom an appeal to this court.

The opinion states the case.

*John M. Orr* and *Joseph Christian,* for the appellant.

*Henry Heaton* and *R. H. Lee,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The testator died 1868, leaving no wife, and no child or descendant, except one daughter, Mrs. Caroline Lovett, and her three children—Thomas J. Lovett, the appellant, Mary Lovett, and Caroline Lovett, aged respectively ten, five, and two years. These grandchildren were, by the testator's will, made the special objects of his bounty. The testator, at his death, was the owner of certain personal property, and of two farms, one containing some ninety-eight or one hundred acres, called "Mulberry Grove," the other of about one hundred and seventeen acres, called "Osburn." By the following will the testator disposed of his estate:

I, Jefferson C. Thomas, of the county of Loudoun, Virginia, do make this my last will and testament, in manner and form as follows:

1st. I direct my executor, herein named, to manage my farm, "Mulberry Grove," the profit from it to be paid to my daughter, Caroline Lovett, during her life. At her death the said farm and profits to go to my grandson, Thomas Jefferson

Lovett, if of age, if not, to remain in the hands of my executor until of age.

2d. I direct my executor to manage my farm, "Osburn," the profits and farm to be equally divided among my granddaughters, Mary Lovett and her sister (infant), when of age.

3d. In the event of the above children not living to be of age, Caroline Lovett is to have all the profits from my property, during her life. At her death, I direct my executor to divide my property equally between Lewis Taylor's three children by his second wife (Ruth Bradfield), Oscar, Rodney and Caroline Taylor.

4th. I direct my executor to sell all my personal property, and, *after paying my debts*, to divide all my money equally between my three grandchildren, above named, when of age.

5th. I hereby constitute James McDaniel my executor of this my last will and testament, and request the court not to require security of him. In testimony whereof, I have set my hand and seal this 19th day of August, 1865.

Jefferson C. Thomas, [Seal].

Witness—Asa M. Janney,
    "    E. R. Purcell.

This will was duly proved and admitted to probate on the 13th day of April, 1868; but the executor named declined to qualify; and thereupon, on the 11th of May, 1868, Mahlon Thomas, a relative, at the request of Caroline Lovett and her husband, Tazewell Lovett, qualified as administrator with the will annexed.

The administrator, after qualifying, returned an inventory and appraisement of the estate, and settled two accounts before F. M. Henderson, then commissioner of accounts for the county court of Loudoun—the last of which was of date February 23d,

1874. Thereafter the administrator laid before the same officer, at least every year, until the year in which this suit was brought, his papers and vouchers for the settlement of his accounts; but said officer did not settle and report, and finally, his mind proving unsound, was committed to the lunatic asylum at Staunton, said accounts remaining unstated or reported.

In the meanwhile the testator's daughter, Caroline Lovett, had died in November, 1869, and his said granddaughter, Mary Lovett, had died a short time after the death of her mother, the said Caroline. And the grandson, Thos. J. Lovett, becoming of age on the 27th day of February, 1879 (his sister, Caroline, being about 20 years of age), brought this suit soon after arriving at his majority. By reason of the death of Mary Lovett, in infancy, it became necessary to have the will construed, so as to determine who was entitled to the interest devised to her.

Thos J. Lovett filed his bill in March, 1880. The suit, in its inception, judging from the character of the bill, seems to have been one of a purely friendly nature—seeking only a construction of the will, and an account for distribution—there being in the bill no charge or intimation even of bad faith, waste, or mismanagement on the part of the administrator.

The cause having been matured for hearing, a decree was entered directing Wm. N. Wise, one of the court's commissioners, to state and settle the actings and doings of Mahlon Thomas, as administrator of Jef. C. Thomas, deceased, taking the accounts theretofore settled as a basis, but to correct any errors or omissions ascertained to exist therein. To ascertain the net balance of personalty belonging to the estate and in the hands or under the control of the administrator for distribution; to state a distribution account, giving to complainant one-third of the balance as legatee; and to settle and report an account of the rents and profits of the "Mulberry Grove" farm

up to the time the complainant became of age, and a like account of the "Osburn" farm to date of decree.

In obedience to the decree above referred to, Commissioner Wise made a brief and wholly insufficient report. And the cause coming on again in October, 1880, a decree was then entered construing the testator's will. It being clear that the complainant, Thomas J. Lovett, was entitled to "Mulberry Grove" and its profits since his mother's death, the decree only defines the nature and extent of the interests of Thomas J. Lovett and his sister, Caroline, in the personal property, and in "Osburn" and its profits. It declares that T. J. Lovett and his sister are, under the will, each entitled to one-third of the personal fund, payable as they severally attain the age of twenty-one years, and each to one-half of the other third, as distributees of their sister, Mary's, interest. That Caroline Lovett, is, under the will, entitled to one-half of "Osburn" and its profits, and as heir of her sister Mary, to another fourth of "Osburn" and its profits; and that T. J. Lovett, as an heir of his sister Mary, is entitled to the other fourth of "Osburn" and its profits; and that as to the personalty, realty and profits which said T. J. and Caroline Lovett acquired by the death of their sister Mary, "it passed, descended and vested in *fee in presenti*," and that they were entitled "to the immediate possession, use and enjoyment thereof." And the decree recommitted to Commissioner Wise his former report, with instructions to execute the former decree of April term, 1880, and to state, settle, and adjust the accounts of Mahlon Thomas, administrator *c. t. a.* of Jefferson C. Thomas, deceased, as directed in said decree, and to state distribution accounts between Thomas J. Lovett and Caroline Lovett, in accordance with the decree of October term, 1880.

Commissioner Wise executed the decree, and in January, 1882, returned his report, a number of depositions taken before

him, and two alternate statements, numbered one and two, taken at the instance of the parties respectively.

The commissioner, by his report (marked A), ascertains as due by the administrator, January, 1882, on account of the personal estate, the sum of - - - - - - $5,962 85

Due by same, on rent of Mulberry Grove, February 1, 1879, the sum of - - - 1,883 81

And due by same, on rent of Osburn, December 31, 1881, the sum of - - - - 2,608 79

Making in all, - - - - $9,555 45

These several sums were, by the commissioner, distributed as directed by the decree.

Alternate statement, No. 1, reported by the commissioner, was made at the instance of counsel for the defendant—the commissioner, in his report (A), having treated the administrator as a testamentary guardian, and charged him with compound interest. In statement No. 1 the administrator is only charged with simple interest, and is allowed commissions and disbursements, as shown by vouchers; and the result was the administrator was found in debt in the following sums:

On account of personal estate, - - - $4,413 37
On rent, "Mulbery Grove," - - - 1,591 22
On rent, "Osburn farm," - - - - 2,579 41

Making total indebtedness by this statement, - $8,583 00

By statement No. 2, made at the instance of counsel for the complainant, the administrator is charged with compound interest on the annual balances, disallowed commissions, charged with the rent received in first year, and after that with

the appraised value of the rent of each farm, and all allowances for bills paid by administrator, which were objected to by complainant's counsel, and were rejected.   And the result is:

| | | |
|---|---|---|
| Amount due by administrator on personal estate, - - - - - - | $5,051 21 |
| Amount due "Mulberry Grove," - - | 2,778 35 |
| Amount due on "Osburn farm," - - | 6,560 69 |
| Total by this statement, - - - | $14,390 25 |

To the commissioner's report numerous exceptions were filed by both parties. On the 25th day of October, 1882, the cause came on again to be heard, when a decree was pronounced which overruled all the exceptions, confirmed the said commissioner's report and decreed accordingly, rejecting said special statements No. 1 and No. 2. In the meantime the administrator, Mahlon Thomas, died, and the cause was thereafter proceeded in against his personal representatives. Subsequent to the decree last above referred to, several decrees of minor importance were entered in the cause, one in respect to a sum of money paid by the administrator of Mahlon Thomas, as surety of Thomas J. Lovett, and another in regard to the sum of $866.43 paid to the general receiver as a credit on the decree aforesaid in favor of Thomas J. Lovett, one of which decrees was rendered on the 1st day of May, 1883, and is one of the decrees appealed from, the other decree appealed from being that of October 25, 1882. From these decrees, on the application of Thomas J. Lovett, an appeal was allowed to this court; and here errors are assigned also on the part of the appellee, so that both parties stand before this court in the attitude of appellants.

We have seen that the commissioner, by his said report proper, marked A, charged the administrator, *c. t. a.*, with the

rents actually received, and with compound interest, and allowed him commissions and credits for disbursements according to his vouchers, and made his indebtedness to his testator's estate $9,555.45. But at the instance of the appellant, the complainant below, he filed statement No. 2, whereby said administrator was charged with the rent received the first year, and after that, each year, with the appraised value of rent for each farm, and with compound interest on the annual balances, and was disallowed his commissions and credits for bills paid; which were objected to by counsel for the complainant, and thereby his indebtedness was raised to $14,390.25. Whilst on the other hand, at the request of the administrator, *c t. a.,* the commissioner also filed statement No. 1, wherein he was charged only with the rents actually received (discarding the basis of appraised value of rents), and simple interest, and was allowed his commissions and credit for all the items of disbursement claimed by him; and by this statement the total of his indebtedness was ascertained to be only $8,583.

Between these special rival statements there is a wide difference. If we look to statement No. 2, insisted on by counsel for the appellant, the enquiry is naturally forced upon us: how could the profits of two separate farms, aggregating only about 216 acres, situated in a rural district, and of no special value except for ordinary agricultural purposes, produce, within the period named, such an amount? And this when, as shown by the evidence, these farms came to the management of the administrator badly dilapidated. On the other hand, when we look to the contention on the part of the administrator, as set forth in special statement No. 1, and keep in mind that the lands, buildings, fences and improvements generally were greatly out of repair when the property came to the hands of the administrator, common experience at once suggests that

as good management which results, for the period in question, in a profit to the estate of $4,492.60, and which shows in the hands of the administrator, ready for distribution, the sum of $8,583.00. This is the result, too, after paying commissions to administrator, all taxes, the cost of erecting lines of rail and of stone fences, the costs of a new well, and the cost for necessary repairs to buildings on both farms. The testator's direction to his executor was to *manage* these farms; there was no intimation of any restriction to any particular mode of management, the clear import and meaning of which was that the management should be that which an ordinarily prudent and cautious man would resort to in the conduct of his own affairs; and what the management should be was left to the prudent discretion of the administrator, *c. t. a.*, the executor named having declined the trust. That the administrator would, to say the least, have been guilty of bad management had he neglected to make the necessary improvements, will be conceded by all; and it clearly appears that the improvements made were of a permanent nature, and essential to the estate. But whether the amounts paid by the administrator for such improvements were excessive, is a question to be determined by the evidence.

We have seen also that the court below, by its decree of October 25, 1882, overruled all the exceptions of both the complainant and the defendant to the commissioner's report, A, and confirmed said report, and disapproved said alternate statements, one and two, and distributed the money due from the administrator, as per said report, appropriately between the complainant and his sister and co-devisee, Caroline Lovett.

The court below also, by its decree of the first of May, 1883, modified its previous decree by allowing the administrator a credit on the principal sum which he had, by the latter decree, been ordered to pay the complainant, for a sum of money

which said administrator had paid, as surety for the complainant, to one Piggott, for which no credit had been allowed.

With this general view of the case, we come to the consideration, in their order, of the errors assigned.

The appellant's first assignment of error is, that the court below erred in confirming so much of report A, as charges the administrator with less than the annual value of the realty as ascertained and returned in the appraisement and inventory, and has allowed the administrator credit for his charges, which were objected to, and, also, in overruling the appellant's exceptions, and in rejecting and not confirming the alternate report, No. 2, by the decree of October, 1882.

This is a very broad and comprehensive assignment. It embraces not merely matters pertaining to the annual value of the realty, but also questions as to the propriety of improving and keeping the same in repair, and assails the wisdom and justice of the expenditures for those purposes, as also the allowance of commissions on receipts.

It is true, that the commissioner did not charge the administrator with the rent of the farms, according to the appraisement. In it, "Mulberry Grove" was put at a rental value of $300, and "Osburn" at $400. This was in 1868. Whatever may be the effect of the appraiser's views in determining the rental value of the property at that time, this appraisement cannot be looked to to fix its value at other times and under different circumstances, not foreseen nor to have been reasonably anticipated by them. The rental value of real estate, for agricultural purposes, must depend upon the fertility of the soil, the general condition of the property, and especially upon the prices of agricultural products; and the latter depend upon the law of supply and demand, and are always, more or less influenced by the financial condition of the country.

Again, in renting land many considerations weigh on the

mind of the landlord—the amount of rent is one, but it is not always or necessarily the paramount consideration, nor more important than the permanent improvement of the soil, and the preservation of buildings and fences, and the erection of necessary improvements which add to the comfort and value of the property.

It is not pretended that the administrator did not account for all the rent he received or could collect by reasonable diligence.   But the contention is that because he did not expose the farms for rent at public auction to the highest bidder, he should be charged with the appraised rental value.   There is no law or usage requiring a fiduciary to do that.   Judicious men rarely rent land at public out-cry, because to do so would deprive them of all power to discriminate between bidders, and to secure reliable and competent tenants.

The testator manifested the utmost confidence in his chosen executor, and bestowed on him the unrestricted *management* of these farms; and the administrator, *c. t. a.*, who accepted the trust upon the solicitation of his relative, Mrs. Lovett, a life beneficiary under the will, occupied the place and was armed with all the authority which the executor named could have exercised, and had only to consult his own honest judgment in the *management;* and if, viewing his methods in the light of subsequent events, they appear not to have been the most expedient, yet if he has conducted his fiduciary affairs with reasonable care, and as a prudent man would conduct his own, he will not be held accountable for unexpected losses. The principle is well stated by Hinton, J., in *Watkins* v. *Stewart*, 78 Va. (3 Hansbrough), p. 114, as follows: "Without doubt courts of equity, from the time of Lord Hardwicke down to the present moment, have been accustomed to look with indulgence upon the acts of trustees and other fiduciaries; and have shown a manifest disinclination to hold them personally responsible

for losses occurring in the management of the trust funds; whenever it has appeared that the trustee or other fiduciary has acted in good faith in the exercise of a fair discretion, and in the same manner in which he would probably have acted if the subject had been his own property."

In the case in hand it cannot be said that anything was actually lost to the estate through the fault of the administrator; and the appellant's contention must be taken as resting upon the idea that more would have been realized for the estate under a different management. However this may be, it is sufficient to say in the absence of any proof of bad faith, that the management, without restriction of any kind, was committed to this administrator, and his management cannot, under the circumstances, be impugned.

On the subject of the rental value of these farms the evidence is somewhat conflicting, but it appears to preponderate largely in favor of the view taken of it and stated in the report of the commissioner, who saw and heard the testimony of witnesses probably well known to him. We are, therefore, bound to conclude with the court below, that his views were correct, and to hold that in this particular this assignment of error is not well taken. And what has been said in respect to the annual rents, applies with equal force to the credits which the commissioner, in report A, allowed the administrator for the sums expended in fertilizers used on the two farms, and for necessary permanent improvements thereon.

As to the commissions allowed the administrator, the allowance or refusal thereof rested in the sound discretion of the court under the circumstances of the case. Under Code 1873, chapter 128, section 7, the administrator annually laid his accounts before the commissioner of accounts for Loudoun county. The failure of that officer regularly to audit, state, and report thereon to the county court cannot be justly laid to

the blame of the fiduciary. The failure of the fiduciary to present within the specified time his accounts for settlement, does not necessarily work a forfeiture of his commissions. The law remits to the court the power to refuse or to allow them. In this case we cannot see that the court below erred in confirming the report, which, under the circumstances, allowed them.

The appellant's second assignment of error is, that the court below, in its decree of May 1, 1883, allowed the administrator credit on the amount which, by the decree of October, 1882, it had directed him to pay *de bonis propriis* to the complainant, for the amount paid by the former as surety for the latter to Piggott, and that it applied the payment to the principal, instead of first to the costs, then to the interest and lastly to the principal.

This assignment is not well taken. The debt was paid to Piggott after the decree in favor of the complainant had been rendered. Hence the payment must be credited on the decree, if credited at all; and surely it was a just and lawful charge in favor of the administrator, *c. t. a.*, against the complainant. The fact is, that the amount of the payment was, in effect, credited on the interest first and then on the principal. The principal decreed to be paid the complainant by the first decree was $3,087.60, with interest on $2,709.28 from February 1, 1882. From this sum, $1,068.68, the amount of the Piggott payment, was deducted, which left $1,640.60, to which was added $380.32, all the interest due, making $2,020.92, as of February 1, 1882. The balance due on the costs was only $144.83, which sum, of course, bore no interest. And if, which is questionable, it was proper to extinguish the costs before applying the credit to the principal, the extent to which the appellant was injured by the failure to so apply it, is only the interest on that amount, which is so small that this court can-

not see the propriety of reversing the decree and remanding the cause on that account. In this respect, we may, with appropriateness, apply the maxim—*de minimis non curat lex.*

But the appellee asks, by way of cross-appeal, that this court will look to the whole record and reverse the decree of the 25th day of October, 1882, for the following alleged errors to his prejudice:

1st. In overruling the fifth exception of Mahlon Thomas to report A, charging the administrator with $599.99, the amount of the principal and interest of a debt of W. P. Thomas to the testator. It appears from the evidence in the record that William P. Thomas was insolvent, and the administrator did not sue him because it would have been fruitless, and would have imposed unnecessary costs upon the estate.

In *Mitchell's Adm'r* v. *Trotter and Wife*, 7 Gratt. 136, this court held, " that a personal representative is not bound to sue for the recovery of a debt due the estate, when it is apparent that the debtor is unable to pay it." We are of opinion that the administrator *c. t. a.*, was not justly and lawfully chargeable with this debt, and that the decree is erroneous in overruling the said exception.

2d. The appellee's second assignment is, that said decree of October, 1882, is erroneous in that it overruled the exceptions of Mahlon Thomas to commissioner's report A, so far as it charges the administrator with compound interest on the annual balances in his hands, and in confirming said report.

We are of opinion that this assignment is well taken. The will of Jefferson C. Thomas, deceased, directed that his farms should be managed by his executor, and the profits thereof should be distributed when his grandchildren became of age. It did not direct those profits to be invested in interest-bearing bonds, or in any other way. In this respect this case is distinguished from that of *Garrett* v. *Carr*, 1 Rob. R. 196, where

the testator directed that his lands be sold and the proceeds invested in stock of the Bank of Virginia, or in such other property as the executors might think advantageous to his children.

In *Creighler's Committee* v. *Alexander*, 33 Gratt. 674, in which the interest properly chargeable to the committee of a lunatic was considered by this court, Staples, J., reviewed the authorities, including the case of *Garrett* v. *Carr*, and said: "All that can be said, therefore, is that no inflexible rule can be laid down on the subject, which would apply to all cases. Generally, however, it is conceded that a trustee and other fiduciaries, except a guardian, are liable for simple interest. This doctrine seems to be settled by a great variety of authorities, both English and America. 1 Perry on Trusts, sections 470–474; *Barney* v. *Saunders*, 16 Howard, 535; Hill on Trustees, 571, note. There is nothing in the case before us to take it out of these general rules. The unexpended proceeds in the hands of the intestate were generally small sums, mainly the proceeds of the negro hire and the rent of the land retained by him. If these proceeds were punctually collected by the intestate, it does not appear that they were used in his own business, or that he derived any benefit therefrom. It was a case of mere neglect to invest the money, for which the intestate is chargeable with simple interest only."

This reasoning seems to be strictly applicable to the circumstances of the case under consideration. We are, therefore, of the opinion that the administrator, *c. t. a.*, should be charged only with simple interest on the moneys of the testator which came into his hands in the course of his administration of the estate, the *management* of which was confided to him, and that the court below committed error in overruling the appellant's said exceptions, and in confirming the report in so far as it charges the administrator with compound interest

thereon. For the reasons aforesaid the decree of the 1st of May, 1883, is affirmed, and the decree of October 25th, 1882, must be reversed in favor of the appellees, in the respects aforesaid, and the cause remanded to the circuit court of Loudoun county, for further proceedings in accordance with the views contained in this opinion.

Decree was as follows:

The court is of opinion, for reasons stated in writing and filed with the record, that there is no error in the said decree of May 1st, 1883, and that the same ought to be affirmed. And the court is further of opinion that the said decree of October 25th, 1882, is erroneous and ought to be reversed in favor of the appellee, in the following particulars, to-wit:

1st. In overruling the fifth exception of Mahlon Thomas, administrator with the will annexed of Jefferson C. Thomas, to the commissioner's report A, charging said administrator with $599.99, the amount of principal and interest of a debt of Wm. P. Thomas to the testator, and confirming said report in that respect; and

2d. In overruling the exceptions of said administrator to said report A, in so far as it charges the said administrator with compound interest on the annual balances in his hands, and in confirming said report in that respect. But the court is of opinion that in all other respects said decree ought to be affirmed. It is, therefore, decreed and ordered that said last named decree, in the respects named, and only in those respects, be reversed and annulled in favor of the appellees, and that in all other respects the same be affirmed. And it is further decreed and ordered that the said first named decree, of May 1st, 1883, be fully affirmed; and that the appellees recover against the appellant, their costs by them expended about their

Decree.

defence of the appeal and *supersedeas* aforesaid here; and the cause is remanded to the said circuit court, to be further proceeded with in conformity to the views in writing filed as aforesaid.    Which is ordered to be certified to the said circuit court of Loudoun county.

DECREES AFFIRMED IN PART, AND IN PART REVERSED IN FAVOR OF THE APPELLEES.