# Richmond.

## WARD v. FUNSTEN.

NOVEMBER 14th, 1889.

1. CHANCERY PRACTICE—*Final decree—Reinstatement.*—Where there is nothing in a decree to show that the court meant to end the cause, the words "final decree" at the head of the decree and the unauthorized leaving by the clerk of the cause off of the docket, do not make it final so as to prevent the court from reinstating it.

2. IDEM—*Former decree—Its enforcement.*—In a suit to enforce contracts for sale of land, the balance of the purchase money was, at the donor's request, ordered by the court to be invested in trust for the vendor's widow and children : *held,* the cause may be reinstated to carry into effect the decree and avoid multiplicity of suits, though the original plaintiff has no interest therein.

3. TRUSTS—*Construction—Case at bar.*—The money was invested for the use of the widow and her children during her life and until the youngest child should attain the age of 21, and all the females should marry and be provided with homes. Widow died. All the children reached 21, and only one was unmarried, and she had a home with her aunt. *Held,* the unmarried daughter was entitled to the whole income.

4. CHANCERY PRACTICE—*Parties.*—It was not necessary that the married daughters, their husbands, or the donors of the fund, to whom it would revert, should join in the petition that the income be paid to the unmarried daughter, as she was the only one interested. Nor was it reversible error that the married daughters and the donors *did* join in the petition, as they asked for no relief, but united to show their acquiescence in its prayer. Code 1887, sec. 3450.

5. IDEM—*Trustees—Commissions—Case at bar.*—A trustee who failed to make annual settlements, or any statement to the beneficiaries, as directed by Code 1887, secs. 2678 and 2679, whose only excuse was that he did not deem it necessary, as he had annually paid the interest : *held,* not entitled to commissions; and that his right to future commissions will depend upon his future conduct.

Appeal from decree of circuit court of Frederick county, entered at its March term, 1889, on the petition filed by Emily R. Funsten and others, in the chancery suit of *H. H. McGuire* v. *O. R. Funsten and others.*

This was a suit in equity, brought soon after the late war, in the circuit court of Clarke county, by Dr. Hugh H. McGuire, for the enforcement of a contract for the sale of a tract of land, situate in that county. The balance of purchase money due by the complainant, amounting to upwards of $1,000, was ordered to be invested for the benefit of the widow and children of the vendor, David Funsten, deceased, and George W. Ward was appointed trustee, to make the investment and to manage the trust subject. The money thus ordered to be invested, belonged, in fact, to the heirs of Elizabeth Funsten, deceased, from whom David Funsten, in his lifetime, had purchased the land; but, upon their request, the money was invested as aforesaid. The decree directing the reinvestment was entered at the May term, 1868. It directs the trustee to invest the money in a house for the widow and children, and then the trust is declared in these words:

"And he [the said trustee] shall hold the same for the use and benefit of the said widow and children during her life, and until her youngest child attains the age of twenty-one years, in case of her death before that event, and until also all the females of said children shall marry and be provided with homes; and after the happening of these events, *viz: the death of the said widow, the attainment of the age of twenty-one years by all the said children, and the marriage of all the said females of said children*, then the said trustee shall hold the said trust property, or the proceeds of the sale of it, subject to the control and direction of the defendants, O. R. Funsten and wife, Emily Funsten, George W. Ward and wife, and Margaret Byrd; and full power is given to the said trustee to sell the said trust property and reinvest the proceeds of sale, with the consent of the last-named defendants, or a majority of them."

At the head of the paper on which this decree was written, are the words "final decree," and the cause seems to have been thereafter left off the docket; but there was no order of the court directing it to be removed from the docket as an ended cause.

The widow has since died, and all the children—of whom there were ten—have attained the age of twenty-one years, and all the females, with one exception, have married. The fund was invested by the trustee in a house and lot near the city of Alexandria, which was occupied by the family as a home until after the widow's death. After they ceased to occupy it, in the year 1873, it was sold by the trustee for $2,000. Since the happening of these events, to-wit: in February, 1888, the following order was entered:

"*Hugh H. McGuire* v. *O. R. Funsten et als.* On motion of defendant, by attorney, this cause is reinstated on the docket of this court, and leave is granted to file the petition of R. Emmett Funsten, Wm. F. Funsten, J. J. Funsten, Geo. M. Funsten, Rich'd K. Funsten, Mary C. Reed, Carey Slaughter, Lizzie L. Hink, Emily R. Funsten, Emily Funsten and Susan M. Dame; and said petition is accordingly filed, and it is ordered by the court that Geo. W. Ward, in his own right and as trustee for Susan M. Funsten and her children, be summoned to appear at the next term of this court and protect his interest in this suit."

All the petitioners mentioned in this order are children of David Funsten, deceased, except Emily Funsten, who is their aunt, and who is also one of the heirs-at-law of Elizabeth Funsten, deceased, above referred to.

The petition avers that the widow is dead: that all the children of David Funsten are now over twenty-one years of age, and that all the daughters are married, save Emily R. Funsten, the youngest, to whom her co-petitioners have assigned all their right, title and interest in the trust fund; and the

prayer of the petition is that the trustee, Ward, be directed to pay annually hereafter to the said Emily R. Funsten all the interest accruing on the trust fund in his hands as aforesaid.

To this petition the trustee demurred, and also answered. The principal ground of defence relied on in the answer, and the only one necessary to be noticed, is that, inasmuch as the widow has died and all the children have attained full age, and all the daughters have married, except one, and that one has a home "outside of the trust," to-wit, with her aunt, Miss Emily Funsten, and is comfortably provided for, all the ends and purposes of the trust have been accomplished, and the trust fund should, therefore, be divided among those ultimately entitled to it, as directed by the decree of May term, 1868.

The cause was subsequently removed, by consent, to the circuit court of Frederick county, after which an order was entered directing a commissioner of the court to settle the trustee's accounts.

In obedience to this order, the commissioner to whom the cause was referred, returned a report, showing a balance due by the trustee of $1,812, after allowing him commissions and expenses. To this report the trustee excepted on two grounds, viz: (1) Because the commissioner ought to have reported that the trust is at an end; and (2) because an adequate sum was not allowed the exceptant for costs and expenses of suit. The children of David Funsten also excepted to the report, because it allowed the trustee commissions; though he had made no previous settlement of his accounts.

The circuit court overruled the first exception of the trustee and sustained the second—at least to the extent of allowing him $35 for counsel fees and the costs of the suit; and it sustained the exception of the Funsten children. And the court, being of opinion that, inasmuch as Emily R. Funsten is yet unmarried, the object of the trust has not been accomplished,

and that she is entitled to the whole income of the trust fund so long as the trust shall last, decreed accordingly. The decree also contained the following provision:

"And the trustee, asking of the court an instruction upon his right to commission in future, it is adjudged, ordered and decreed that he is not entitled to charge in the future any commission, should he desire to continue in the discharge of his duties as trustee."

From this decree the trustee obtained an appeal from one of the judges of this court.

*Harrison & Byrd,* for the appellant.

*Barton & Boyd* and *Robert M. Ward,* for the appellees.

LEWIS, P., (after stating the case as above,) delivered the opinion of the court.

The first point made by the appellant is, that the circuit court erred in re-instating the cause on the docket, (1) because the decree of May term, 1868, finally ended it; and (2) because the petition filed by the appellant is not germane to the original subject of controversy. In other words, that the suit, which was brought by McGuire for the specific performance of a contract for the sale of land, has no connection with the controversy between the appellant, as trustee, and the appellees.

This position, we think, aside from the consideration that no question as to the jurisdiction was raised in the court below, is not well taken. There is no doubt that if the cause was finally ended and removed from the docket by the above mentioned decree, the circuit court erred in re-instating it; for a final decree can be set aside or modified, after the term at which it was rendered, only by bill of review or appeal; and these

remedies must be pursued, if at all, within the time prescribed by the statute. *Jones* v. *Turner*, 81 Va., 709.

But we do not think that such was the effect of that decree. The cause was removed from the docket, not by order of the court, but by the clerk, because, no doubt, in his opinion, there was nothing more to be done in it; and although the decree is marked a "final decree," yet those words do not determine its character or effect, for that must be determined by what is contained in the body of the decree, and there is nothing in the decree itself which shows that the court intended to put an end to the cause. It was, therefore, competent for the court to order it to be reinstated, and to take cognizance of the matters set forth in the petition.

It is true the plaintiff by whom the suit was originally brought had no interest in those matters, but it was, nevertheless, competent for the court, sitting as a court of equity, to direct the fund under its control, arising from the sale of the land, to be invested, and to appoint a trustee to manage the trust, as it did; and if it could rightly so decree, it could also take such measures, in the same suit, as were necessary to carry its decree into effect, without requiring a separate suit to be brought to accomplish the same result. By so doing a multiplicity of suits was avoided, and the rights of no one have been prejudiced.

The appellant's next point is, that the husbands of the married daughters ought to have been united with their wives in the petition, and that it was error not to make them parties. But this was not necessary, because it is conceded that the marriage of the daughters after having attained the age of twenty-one years, *ipso facto* terminated their interest in the trust, and hence their husbands have no interest in the matter. The married woman's act, as it is called, which requires the husband to be joined with the wife in suits by or against her touching her separate legal estate, has no application, this not

being a proceeding under that statute. The appellees, on the other hand, insist that it is not shown by the record that the daughters were married at the time the petition was filed, and *non constat* they were not widowed or divorced. This, however, is a matter of no importance, since, if the daughters are married, neither they nor their husbands have any interest in the suit, and if they are not married then they are *sui juris*, and, being before the court, are bound by the decree.

Neither were the donors of the fund, to whom, by the terms of the trust, it is ultimately to revert, or their representatives, necessary parties to the petition. They are not interested in the object of the petition, nor are their rights in any way affected by the decree appealed from. The prayer of the petition is, simply, that the trustee be directed to pay the whole income of the trust fund to the only unmarried daughter, and the decree is in conformity with the prayer of the petition. The right to the *corpus* of the fund is not touched by the decree.

Objection is also made that R. K. Funsten, one of the sons of David Funsten, is not before the court, because the petition was not signed by him, either in person or by attorney; but there is nothing in this objection. It was not necessary that the petition should have been signed by any one. The fact, however, is that his name appeared in the body of the petition, and the record shows that he appeared and obtained leave to file his petition, and he is recited as one of the petitioners in the decree complained of.

A question is also raised as to the misjoinder of parties. It is contended that inasmuch as the sons and married daughters of David Funsten have no longer any interest in the trust, they were improperly joined, and hence the demurrer to the petition ought to have been sustained. There is no doubt that where a misjoinder is apparent on the face of the bill, or in a case like this, on the face of the petition, the objection may be raised by demurrer. *Vaiden* v. *Stubblefield*, 28 Gratt., 153;

4 Min. Inst., 1148. But we do not think the objection a substantial one in the present case—certainly not one for which the decree should be reversed—because the parties alleged to have been improperly joined, are asking no relief for themselves, but simply united in the petition as evidence of their acquiescence in the view that the unmarried daughter is entitled to the whole income arising from the trust fund. In other words, it was a sort of disclaimer or quit-claim on their part to any interest in the trust subject. 1 Bart. Ch. Pr., 138. And in any view, the objection is covered by the statute, which provides that no decree shall be reversed for any mere informality in the proceedings, at the instance of a party who has taken depositions. Code, sec. 3450.

As to the merits, it is conceded on both sides that, according to the true interpretation of the trust, as each of the sons attained his majority, and as each of the daughters attained that age *and married*, their respective interests in the trust abated. But the appellant contends, in addition to this, that the trust itself has ceased. His contention, in other words, is that the sole object in creating the trust was to provide *a home* for the family, and, consequently, as the widow is dead, and all the children have attained full age, and all the daughters have married, save one, and that one has a home with her aunt, the objects and purposes of the trust have been accomplished, and the fund reverts to the donors.

If we look to the answers of the donors, wherein they ask that the fund be invested, and to the accompanying paper, wherein their wishes in that regard are fully set forth, and then to the decree creating the trust, and construe all these documents together, as we must, it is very clear that this position of the appellant is untenable.

Both in their answers and in the paper just mentioned, the respondents ask that the fund be applied "in such a way as will *best promote the interest* of the family." And while it was evidently contemplated that a house would be provided as a

home, and such, indeed, was the express direction of the decree, yet it was by no means intended that the trust subject should under any and all circumstances remain in that shape. The primary object was not so much to provide a home, as the means of support, for the family, who were in destitute circumstances, and foreseeing that changes in the family would inevitably occur, provision was accordingly made in the decree for a sale of the home, and a change of investment, if deemed judicious. And the trustee was directed to hold the trust property "for the use and benefit of the widow and children during her life * * and until the marriage of *all* the females of the said children"; which not only shows that the trust is not to end before the marriage of all the daughters, but repels the idea that the fund can be rightly used only in providing and maintaining *a home.*

It could hardly have been intended that an unmarried and unprotected female should continue to occupy the home originally provided for the family, after the family has been broken up and scattered, or else forfeit her interest in the trust altogether. Such a construction would not only be unreasonable, but absurd, and would certainly not be giving effect to the declared intention to "best promote the interest" of the *cestuis que trust,* of whom the unmarried daughter is the only one now remaining. Nor has the course of dealing by the trustee himself, since the sale of the home, in September, 1873, been consistent with that idea.

Moreover, the averment in the answer of the trustee, that the unmarried daughter has a comfortable home with her aunt, rests upon no other foundation than the mere fact, as the evidence shows, that she is the recipient of the bounty and hospitality of her aunt. This of course can be legally withdrawn at any time, and, for aught the record shows, its withdrawal would leave her helpless and penniless, if she has no interest in the fund in question.

But even if the averment were true, the result would be the

same.    The terms of the trust are too plain to be misunderstood.    The fund is dedicated, during the existence of the trust, for the benefit of the *cestuis que trust* absolutely, and no change in their pecuniary circumstances can affect their rights. In other words, the trust is to continue until the death of the widow, and until all the children have reached the age of twenty-one years, and all the daughters have married, without any other conditions whatever.

It is true, as the appellant suggests, that the motive which prompted the creation of the trust was to relieve the wants of a needy family, and not to supply pin-money for a young lady in comfortable circumstances.    But that does not affect the plain meaning of the language in which the trust is declared, or justify our adding to the trust a condition not prescribed by the donors, or found in the decree establishing it.    In short, we are of opinion that, as the interest of all the beneficiaries in the trust, save one, has abated by the fulfillment of the conditions prescribed, that one is entitled to the whole income in unrestricted right, as the circuit court decreed.

As to the only remaining question, namely, the trustee's right to commissions, we are of opinion that the circuit court did not err in sustaining the exception to the commissioner's report on that subject.    It appears that during the many years he has been trustee, he has made no settlement of his accounts, except such as he has been compelled to make in this suit; nor has he ever given to the parties in interest any statement of his receipts; and the only excuse he offers for his delinquency is, that he has annually paid the interest on the principal fund, since the sale of the house and lot, and that he " did not think the law required him to make annual settlements, and thereby subject the fund to unnecessary costs."    This is no excuse at all, and was properly so treated by the circuit court.    The mere payment of interest was not giving such a statement as the law contemplates, and ignorance of the law does not excuse. Code, secs. 2678, 2679.

It appears, moreover, from the report of the commissioner that the trustee has violated his duty in another particular. In October, 1882, he collected the purchaser's bond for the purchase money of the house and lot, and instead of safely investing the fund, as it was his duty to do, within a reasonable time thereafter, he took his individual bond for it to himself as trustee, which he still holds. In other words, he went through the form of borrowing the fund for his own use, which a trustee is not permitted to do, and of all which, for aught the record shows, the *cestuis que trust* was not informed. 1 Perry, Trusts, sec. 452; 2 Pom. Eq., sec. 1076.

In all the cases in which this court has allowed commissions, under the act of March 1, 1867, to delinquent fiduciaries, ample excuses for the delinquency have been given. Thus, in *Brent's Adm'r* v. *Senseny* (not reported, but referred to in 2 Bart. Ch. Pr. 720), the fiduciary not only furnished elaborate statements, from time to time, to the parties in interest, showing the condition of the trust estate, but exercised skill and vigilance in the management of the estate under extraordinary difficulties. And the circumstances were similar in the subsequent case of *Brent's Adm'r* v. *Clevinger*, 78 Va., 12. In *Lovett* v. *Thomas' Adm'r*, 81 Va., 245, the administrator annually laid his accounts for settlement before the proper commissioner, but the latter failed to act upon them, through no fault of the administrator, and this appearing to the satisfaction of the court, commissions were allowed.

The case before us resembles in its circumstances the case of *Trevelyan's Adm'r* v. *Lofft*, 83 Va., 141. In that case compensation was refused, and the court in its opinion declared that in no case ought compensation to be allowed a delinquent fiduciary, except where he gives such a reasonable excuse for his failure to comply with the law, that to refuse compensation would be inequitable. And this, of course, must be determined upon the circumstances of each particular case.

A fiduciary who acts in good faith and with reasonable prudence in the discharge of his duties, ought, undoubtedly, to be dealt with liberally, and ought not to be held personally responsible for losses that occur under such circumstances. But where a fiduciary utterly fails to obey the law requiring settlements of his accounts, and then turns around and asks that he be allowed out of the trust estate compensation to which he is not entitled except under peculiar circumstances, the case is different; and unless, in such a case, the lower court has plainly abused its discretion, in allowing or refusing compensation, its action ought not to be disturbed by the appellate court.

In *Crigler's Committee* v. *Alexander's Er'or*, 33 Gratt., 674, it was said by the court that, inasmuch as the right of a fiduciary to compensation is not a vested one, but is derived from the statute, he must comply with the requisitions of the statute before he is entitled to such compensation, and hence the loss thereof by reason of a failure to settle his accounts, is in no just sense a forfeiture or penalty, but a mere matter of statutory regulation. It was also said with respect to the several statutes requiring the settlement of fiduciary accounts, that they have always been regarded with great favor, as founded upon the soundest considerations of public policy, and as furnishing the best and probably the only security for the rights of infants, insane persons, and others whose estates are to be administered by trustees. And it was very justly added that the loss of compensation, as a consequence of a failure to comply with these statutory requirements, has been shown by experience to be the only effectual mode of enforcing them.

The circuit court, however, went beyond the limits of the present case in passing upon the trustee's right to future commissions, although it did so at his own request. His right to commissions in the future, if he continues to act as trustee, will depend upon his future conduct, and cannot, therefore, be adjudicated now. There is no proof that he has ever agreed

to act without compensation, and his own deposition is positively to the contrary. This, however, is no ground for a reversal of the decree. In this particular the decree may be amended, and as amended it will be affirmed.

Decree amended and affirmed.