## CIRCUIT COURT OF FAIRFAX COUNTY

Tove Head

v.

Gordon Head

March 28, 1996

Case No. (Chancery) 133818

BY JUDGE M. LANGHORNE KEITH

On March 24, 1994, Tove Head filed this action in connection with a trust dated December 29, 1983. Ms. Head seeks an accounting from Gordon Head, the disbursement of the Trust Corpus to her, the removal of Gordon Head as trustee, and an order requiring Gordon Head to personally pay her costs and expenses, including attorneys' fees. On July 13, 1994, the Court entered an Order allowing Gordon Head to interplead $2,499.74, the amount Dr. Head alleged to be in dispute. On August 22, 1994, an amended Bill of Complaint was filed. On December 6, 1994, the case was continued, and Tove Head was given leave to amend her pleadings to add Bryan Head as a party. On December 21, 1994, a Second Amended Bill of Complaint was filed, among other things adding Bryan Head as a party defendant. On March 14, 1995, the Court entered an Order disbursing the $2,499.74 held by the Clerk to Tove Head and requiring each party to individually bear their costs in filing and defending the motion. On May 10, 1995, the Court sustained Dr. Head's demurrer to Count 5 of the Amended Bill of Complaint. Thus, the matters before the Court on February 27, 1996, were a demand for an accounting, a demand for the disbursement of principal of the Trust with interest from January 6, 1994, the removal of Gordon Head as trustee, that Gordon Head personally be ordered to reimburse the Trust for all legal fees and costs incurred in connection with his attempt to avoid accounting to Tove Head and that he

personally reimburse Tove Head for her legal fees and expenses in bringing this action.[1]

After reviewing the evidence in this case and the cases cited by counsel, the Court makes the following findings of fact and conclusions of law.

## I. *Findings of Fact*

In 1983 Ms. Tove Head consulted Attorney Steven L. Best to draw a so-called Clifford Trust to partially shelter the income from a $93,500.00 inheritance from her mother. By the time Ms. Head consulted Mr. Best, the inheritance consisted of a one-half interest in a purchase money note. Two trusts were drawn, each with Dr. Gordon Head as trustee and each with Ms. Head's son Bryan as income beneficiary. Mr. Best recalls drafting the first trust but did not know if he drafted the second instrument.[2] Although the attachments to the trusts are confusing, the Court finds that Ms. Head assigned $65,000.00 of her interest to a December 29, 1983, trust (hereinafter "Trust I") and the remaining $28,500.00 of her inheritance to a January 7, 1985, trust (hereinafter "Trust II"). Except as set forth below, both trusts were treated by both the Heads and their accountant as one trust. Dr. Head had little or no contact with Mr. Best. From 1983 to 1991, Ms. Head via a power of attorney had full investment powers over the investment of the funds in the commingled trusts.

In August of 1987, Ms. Head visited the Outer Banks and entered into contracts to purchase three lots in Carova Beach, Currituck County, North Carolina. One of the lots (Lot 10, Block 5, Section 2) (hereinafter "Lot 10/5/2") was conveyed to Gordon and Tove Head as trustees for Bryan Head by deed dated September 22, 1987. One of the other two lots was conveyed to Dr. Head's pension plan and the other to the Heads jointly. In the fall of 1988, Ms. Head again consulted Mr. Best who prepared three instruments. The first instrument ("Agreement 1") was by and among Gordon Head, trustee, Tove Head and Gordon Head, trustees for Bryan Head. This document provided that trust funds would be used to purchase Lot 10/5/2 for the benefit of Bryan with Gordon Head and Tove Head

---

[1] In Counts 1, 2, 3, and 4, Ms. Head claimed that she had been damaged by the trustee's failure to distribute the December 29, 1983, trust corpus to her on January 6, 1994. However, as there was no prayer for such damages in her prayer for relief and Ms. Head introduced no evidence on this issue at the trial, the claim for damages contained in those counts must fail.

[2] The first trust was notarized by Mr. Best's secretary. The second trust was notarized by Howell Thomas who Mr. Best knew but not well.

holding title as trustees. The second instrument ("Agreement 2") was by and among Gordon Head, trustee, Tove Head and Gordon Head, trustees for Bryan Head, and Tove Head and Gordon Head, individually. The third instrument was between the same parties ("Agreement 3"). The latter two documents provided that Lot 10/5/2 would be owned by Tove Head and Gordon Head using $35,390.47 in funds borrowed from the Trust. Agreement 2 provided that Tove Head and Gordon Head would hold the lot as tenants in common, with interest accruing until January 2, 1991, and payable monthly thereafter. Agreement 3 provided that Tove Head and Gordon Head would hold the lot as tenants by the entirety with interest accruing annually. Otherwise the instruments were essentially identical and called for debt to be evidenced by a note secured by a deed of trust (the "Deed of Trust") with principal to be paid upon expiration of the Trust. No originals of these instruments were produced at the trial, and all of the documents are dated October 27, 1987. A signed copy of Agreement 2 and unsigned copies of Agreements 1 and 3 were introduced. The note referred to in Agreements 2 and 3 was not produced and has presumably been lost. The Deed of Trust was recorded among the Currituck County land records. Both Dr. Head and Mr. Best (by deposition) testified that the agreement reached in October of 1987 is accurately reflected by Agreement 3. Tove Head's testimony as to which agreement is the operative agreement was equivocal and unpersuasive. As Lot 10/5/2 was conveyed as called for in Agreement 3, the Court finds that Agreement 3 sets forth the terms of the Lot 10/5/2 Loan.

In May of 1991, the Heads separated, and a Final Decree of Divorce was entered in June 22, 1993. In the equitable distribution proceeding, the Court ordered that Tove Head receive Lot 10/5/2 and assume the obligation to the trust. Lot 10/5/2 was transferred to Tove Head by a deed dated July 7, 1993. In that conveyance, she agreed to assume and pay the debt secured by the Deed of Trust. Thus on January 6, 1994, the debt matured, and Tove Head owed the Trust $35,390.47 plus interest at 13 percent per annum from October 27, 1987 (simple interest, accrued annually).

As of January 6, 1994, the amount to be disbursed to Tove Head from Trust I was the original $65,000.00 corpus plus Trust I's share of appreciation equal to $1,402.32. From this total of $66,402.47, the Lot 10/5/2 loan principal and interest must be subtracted ($35,390.47 principal plus $28,512.11 interest), leaving a total disbursement to Tove Head of $2,499.74. As noted above, this amount has been disbursed.

Prior to the separation of the parties, Tove Head was fully informed as to the trust transactions and in fact made the investment decisions for the trust. Tax returns for the trust were prepared by Thompson, Greenspon & Co., CPAs. In August of 1992, as part of the Head divorce action, Gordon Head provided Tove Head with five years of the trust documents. Although Tove Head's expert testified that this information was an inadequate accounting, he based his opinion primarily on the so-called "three page account," not the documents produced to Tove Head in 1992. Gordon Head's experts, including Mr. Charles Sher, Jr., a managing partner of Thompson, Greenspon & Co., CPAs, testified that the documents were sufficient to provide Tove Head with information as to the trusts. Mr. Sher testified that they were "adequate and complete and better than some." While the documentation does not necessarily walk the reader through the history of the trusts, the Court agrees with Gordon Head's experts that the information provided was an adequate and sufficient accounting.

Tove Head also complains of the North Carolina loan made by Trust I. Mr. Sher testified that it was not usual for a trust to invest in first trust loans, but it was not unknown and the fact that Tove Head was a party to the loan made it a worthwhile investment.

Tove Head incurred legal fees of $45,631.25 and $912.71 in costs in pursuing this action. Bryan Head has incurred legal fees of $8,889.60 in defending this action. Gordon Head has incurred $22,220.00 in legal fees and costs in defending this action.

From the inception of the trusts, there were eight disbursements from the trusts. Except for one disbursement, all were for trust purposes. The exception is a November 25, 1991, disbursement for real estate taxes in the amount of $254.20.[3]

## II. *Conclusions of Law*

There are five issues in this case that must be resolved. This opinion will deal with these issues in the order set forth in the Second Amended Bill of Complaint.

---

[3] Ms. Head makes no claim resulting from this disbursement. While this disbursement appears to be de minimis, *cf. Willson v. Kable*, 177 Va. 668 (1941), it nonetheless should be reimbursed by Dr. Head. This transgression in the Court's opinion does not warrant the removal of Dr. Head as trustee.

## A. *Failure to Distribute and Account (Count 1)*

Any claim for failure to distribute has been mooted by the Court's order entered March 14, 1995, authorizing the disbursement of the balance of the trust corpus due Tove Head and requiring each party to bear their own attorney's fees.

There is no question that Tove Head is entitled to an accounting, *Shriners Hospitals v. Smith*, 238 Va. 708, 711 (1989), the only question is whether the documentation and tax returns supplied to Tove Head were an adequate accounting. The Court has not found and counsel has not cited any cases that set forth the exact requirements that a trustee must satisfy in preparing his account. It appears that documentation setting forth the condition of the trust, *see Ward v. Funsten*, 86 Va. 359, 369 (1889), as well as the receipts and disbursements of the trust, *see Taylor v. Mahoney*, 94 Va. 508, 512 (1897), is the minimum requirement for a sufficient accounting. Here the expert testimony was in conflict, but the Court finds the testimony of Dr. Head's experts more persuasive. Tove Head and her counsel appeared to want an audit of the trust accounts, and Ms. Head's expert testified that there was a difference between an accounting and an audit. After considering the testimony of the experts and reviewing the documents provided to Tove Head, the Court concludes that Dr. Head provided an adequate accounting.

## B. *The Offer to Hire Accountants at Tove Head's Expense (Count 2)*

Ms. Head asserts that Dr. Head's offer to hire accountants to provide Ms. Head, at her expense,[4] with detailed accounts was a breach of Dr. Head's fiduciary duty. The Court disagrees. Dr. Head had already provided a sufficient accounting. Ms. Head, for reasons she never made explicit, was dissatisfied with Dr. Head's account. Under the circumstances of this case, the Court concludes that it was reasonable for Dr. Head to offer a more detailed and formal audit, but it was also reasonable to condition that offer on payment by Ms. Head of that expense.

## C. *The Interpleader (Count 3)*

Ms. Head's third count alleges that by filing his interpleader action, Dr. Head breached his fiduciary duties by paying the amount owed her into the registry of the Court instead of directly to Ms. Head. The Court has already authorized the disbursement of this money to Ms. Head and required

---

[4] Estimated to be $5,000.00.

each party to bear their own attorney's fees which probably renders this issue moot. However, to preclude further litigation, the Court concludes that as Ms. Head was contesting that she owed interest to Trust I, Dr. Head acted reasonably in paying the amount he calculated was owed Ms. Head into the Court. As the Court has found above, Ms. Head did owe interest to Trust I in the amount of $28,512.11, and that debt has been satisfied by the disbursement to her approved by the Court.

### D. *Improper Investments (Count 4)*

Ms. Head alleges that Dr. Head failed to invest prudently the funds held by the trust. There was little evidence produced on this issue. Mr. Madigan, Ms. Head's expert, testified that the trust grew by a "small amount," but otherwise, there was no testimony concerning the propriety of the trust investments other than Lot 10/5/2 which Dr. Head's expert opined was unusual but not unknown. On this state of the evidence, the Court cannot conclude that Dr. Head breached his fiduciary duty. Certainly, the loan from the trust to Dr. Head and Ms. Head to purchase Lot 10/5/2 is not free from doubt, *see Deford v. Ballentine Realty Corp.*, 164 Va. 436, 440 (1935), and could well be void absent Ms. Head's full participation in the North Carolina transaction. In fact, she was not only a participant, she was the instigator of that investment. As Ms. Head was *sui juris* and had full information of all the material facts concerning the transaction, the principles of waiver and estoppel apply here. 19 M.J., *Trusts and Trustees*, § 121.[5] Because of the failure of proof as to the other trust investments and the waiver found by the Court, the Court concludes that Dr. Head did not breach his fiduciary duty.[6]

### E. *The Charging of Legal Fees to the Trust (Count 6)*

Ms. Head alleged in this count that Dr. Head improperly charged legal fees to the trust. No evidence was produced on this count, and it must fail for lack of proof.

The most troublesome issue in this case is that of attorney's fees. An inordinate amount of treasure has been expended on this dispute. Having

---

[5] Moreover, under the deed of Lot 10/5/2, Ms. Head agreed to discharge the North Carolina debt and save Dr. Head harmless from the undertakings of the debt and the deed of trust securing the debt.

[6] Dr. Head raised the defense of the statute of limitations/laches as to this count, but neither the statute of limitations nor laches applies to express trusts. *Russell's Ex'rs. v. Passmore*, 127 Va. 475, 510-11 (1920).

failed to prevail on any of her claims, Ms. Head must, of course, bear her own fees and costs. Thus, the only question is whether Dr. Head or Bryan Head are entitled to be compensated for their fees and costs, and if so, from what source.

Bryan Head is an adult and was brought in as a nominal defendant in this action. Therefore, his attorneys' fees are between Bryan Head and his attorney. *Patterson v. Trust Co.*, 156 Va. 763, 780 (1931). Dr. Head's fees are on a different footing. As a trustee, and having prevailed, he is entitled to be compensated either by the trust itself or from the beneficiary of the trust personally. *Willson v. Whitehead*, 181 Va. 960 (1943). Here the only equitable source for reimbursement is Ms. Head. The amount of compensation allowed rests in the discretion of the Court. *Patterson v. Trust Co., supra* at 773. The fee affidavit filed on behalf of Dr. Head includes fees relating to the interpleader action, which this Court has already ruled must be borne by the parties. Thus, the Court, after considering that order and after reviewing the bills submitted, finds that an appropriate fee is $16,000.00 plus costs for a total of $18,488.00. Ms. Head shall reimburse this amount to Dr. Head. Counsel should confer as to whether this amount could be paid in installments and present a proposal to the court.

The Court will appoint Mr. Silverstein as trustee for the trusts upon the resignation of Dr. Head as trustee.