## Richmond.

### Trevelyan's Adm'r v. Lofft.

#### April 14th, 1887.

1. Chancery Practice—*Settlements—Agency—Administration.*—In suit against administrator, who had been decedent's agent, distributees' demand that he settle his agency accounts at the settlement of his administration accounts, is reasonable and agreeable to the practice in this State. *Carter* v. *Cutting*, 5 Munf. 223.

2. Idem—*Continuance—Case at bar.*—Question of continuing a cause is always within the sound discretion of the court under the circumstances. In this case the denial was proper.

3. Idem—*Decrees—Rehearing—Review.*—Petition is the appropriate mode of applying for a rehearing of interlocutory decrees, and bill of review of final decrees. And the evidence sought to be introduced must be shown by affidavit to be not only new, but discovered after decree, and not discoverable by due diligence before decree, and not merely cumulative, but such as should produce a different decree.

4. Idem—*Depositions—Reasonable notice—Case at bar.*—Under Code 1873, ch. 172, § 36, the notice in the case here was reasonable and sufficient, both as respects time and mode of service.

5. Idem—*Personal representatives—Commissions—Case at bar.*—Where these fiduciaries fail to lay before commissioner statement of receipts for any year, for six months after its expiration, there was, previous to act of March 1, 1867, an absolute forfeiture of commissions. Since then, their allowance, in such case, is a question of reasonable discretion with the court. In the case at bar, refusal to allow commissions was proper. *Brent* v. *Clevenger*, 78 Va. 12.

6. Idem—*Sale of assets—Case at bar.*—Generally, it is administrator's duty to collect, not to sell, debts due the estate. But circumstances, such as the case at bar, may justify him, acting in good faith and with ordinary prudence, in making sale thereof.

Appeal from decree of circuit court of Amelia county, entered September 12, 1883, in a cause wherein Stephen Meech, suing for himself, &c., were plaintiffs, and J. Arthur

Lefroy, administrator, and others, heirs of Lady Laura Trevelyan, deceased, were defendants. The decree, besides overruling several motions of the administrator, required him to pay the sum of $1,399.95, with interest, as the balance due from him to the estate upon final settlement of his accounts; and he obtained an appeal and *supersedeas.* Opinion states the case.

*Meade Haskins* and *Witt & Caskie,* for the appellant.

*John Dunlop,* for the appellees.

LEWIS, P., delivered the opinion of the court.

In April, 1879, Lady Laura Trevelyan, of England, departed this life, intestate, seized and possessed of large landed estates in the counties of Amelia and Dinwiddie in this State. For several years prior to her death the appellant was her agent in the management of these estates, and on the twenty-fourth of September, 1879, he qualified in the county court of Amelia county as her administrator. On the following day the present suit was instituted, which was a creditors' suit, and to which the administrator and the heirs and distributees of the said intestate were made defendants.

In due time the cause was referred to a commissioner, to take the necessary accounts, including the settlement of the administrator's accounts. At the appointed time and place, the administrator appeared before the commissioner and announced his readiness to settle his administration accounts, when counsel for the distributees demanded that he also settle before the commissioner his accounts as agent. This he refused to do, on the ground that he had had no notice that he would be called upon to settle his accounts as agent, and because he was not then prepared to

settle them. This was in March, 1881, and no settlement of any kind was then made. Two months thereafter he left the country, and went to England, where he had formerly lived, to visit his relations there, and was soon afterwards taken sick, in consequence of which he was unable to return to this country or to attend to business for about eighteen months. In the meantime a decree was entered directing a settlement of the agency accounts, which decree was executed, and various reports were made by the commissioner, which were, except in a few particulars, confirmed. In February, 1883, he returned to Virginia, and was examined as a witness by the commissioner.

On the day the decree complained of was entered, to-wit: on the 12th of September, 1883, his counsel moved the court to continue the cause, and to recommit the same to the commissioner for further inquiry and report touching his transactions as agent and administrator, on the ground that in consequence of his illness and absence abroad he had been prevented from attending in person and fully submitting his evidence before the commissioner when the accounts were taken. But the circuit court overruled the motion, and, among other things, decreed against him for a balance ascertained to be due by him, amounting to thirteen hundred and ninety-nine dollars and ninety-five cents.

In this decree various errors are assigned in the petition for appeal, of which the first is that the circuit court erred in overruling the motion above mentioned. The motion was overruled, because, in the opinion of the court, ample time and opportunity had been given for a settlement of the accounts, and because to grant the motion would be to reward negligence, and to unreasonably delay the cause, which was then ready for hearing.

We are of the opinion that the motion was properly overruled, and, therefore, that the first assignment of error ·

is not well taken. There was abundant notice of the time and place appointed for executing the first decree directing the administration accounts to be settled, and the demand of the distributees that the agency accounts be settled at the same time was both reasonable and in accordance with the established practice in this State. For without a settlement of the agency accounts, there could have been no settlement ascertaining the true balance due by or to the administrator, and hence the right to demand a settlement of those accounts was included in the decree requiring the administration accounts to be settled.

In *Carter's Ex'ors* v. *Cutting*, 5 Munf. 223, Judge Roane, in delivering the opinion of the court, said: "As to the private accounts of the appellant (the executor) with the estate of his testator, the court is of opinion that it was proper to be adjusted in this controversy, although it may not have been specifically and particularly put in issue, and that an account thereof ought to have been taken."

The appellant in the present case ought, therefore, to have been ready to settle his accounts as agent when he appeared before the commissioner in March, 1881; or if not then ready to settle, he ought to have asked for sufficient time to enable him to do so. But instead of asking for time, he denied the right of the distributees to call upon him for a settlement of his agency accounts in this suit, and seems not to have concerned himself about them before his voluntary departure from the country, two months thereafter.

Besides, it does not appear that his personal attendance before the commissioner was at all necessary to a settlement of the accounts. His books and many of his vouchers were, in his absence, produced before the commissioner; and it appears from his own affidavit, filed in the cause, that when he left for England, in May, 1881, he left all of his account-books, papers and documents at his residence

in this city; and it does not appear that they were not produced before the commissioner, or if not, that they might not have been easily produced by communicating, before or after leaving home, with his counsel, who were residents of Richmond, and who were before the commissioner when the accounts were taken. Nor does it appear that he had evidence of any sort which, with the exercise of reasonable diligence, he might not have brought forward before the commissioner's report was returned. So that if he has suffered in the particular mentioned, it is because of his own *laches*, and for which he has no just ground of complaint.

Were the practice under such circumstances otherwise, it would be, as was said in *Richardson* v. *Duble*, 33 Gratt. 730, but " a premium for negligence, and would place it in the power of one or the other of the parties in many cases to protract litigation almost indefinitely." And in the same case it was said, relative to testimony taken after the report had been made, that " whether testimony thus delayed will be heard, must in every case depend upon a sound judicial discretion, to be exercised upon the facts of the case, the nature of the evidence, the reasons given for the delay, and a variety of circumstances which must be adjudged as they arise."

The present case is even stronger against the position of the appellant than the case just mentioned. For here the report of the commissioner had not only been made, but, except in one or two particulars, confirmed, and as to those matters, it had been recommitted and again returned, when the motion to continue the cause for further evidence to be taken was made and overruled.

Moreover, the appropriate mode of applying for a rehearing of an interlocutory decree, rendered on the merits, to enable a party to introduce additional evidence, is by petition; and the petition must not only allege that the

matter sought to be introduced was discovered after the rendition of the decree, but it must be accompanied by an affidavit that the newly discovered evidence could not have been produced, with the use of reasonable diligence, in time to have been used when the decree was pronounced. The substance of the evidence must also be stated, and it must be relevant, and not merely cumulative, and such as, if true, ought to produce a different result on another hearing. And the same rule applies to a bill of review founded upon after-discovered evidence. *Kendrick* v. *Whitney*, 28 Gratt. 646; *Connolly* v. *Connolly*, 32 Id. 657; *Whitten* v. *Saunders*, 75 Va. 563, 572; *Douglass* v. *Stephenson's Ex'or*, Id. 747; 1 Bart. Ch. Pr., 126.

The subject of the next assignment of error is the refusal of the circuit court to exclude the depositions of William Burnett and others, taken in London on the fourth of July, 1881. The motion to exclude was based on the ground that reasonable notice of the time and place of taking the depositions had not been given.

The statute requires reasonable notice to be given to the adverse party of the time and place of taking every deposition. Code 1873, ch. 172, sec. 36. But what is reasonable notice is a question dependent upon the peculiar circumstances of each case, the principal of which are "the distance, traveling conveniences, condition of the roads, and other such matters as affect the ability of the party to attend, personally or by counsel, and to return in time for trial." 2 Bart. Ch. Pr. sec. 220.

In the present case it appears that on the seventh of June, 1881, notice was given that the depositions in question would be taken in London on the fourth of July following, and was served by posting a copy of the notice at the front door of the appellant's residence in this city (he and all the members of his family being then absent from home), and also by serving a copy upon his counsel, the same day.

It also appears that on the next day a copy was mailed to the appellant in England, which, it would seem, he received in due course of mail, and he acknowledged receipt thereof in a letter addressed to the appellees' counsel in this city.

In view of the evidence in respect to communication and the conveniences of travel between this country and England, the notice in point of time was sufficient. But apart from this, it appears from the record that the depositions were in part the basis of several reports made by the commissioner, and there was no exception to either report on the ground that the depositions were taken without sufficient notice until March, 1883, long after the reports had been returned. And the appellant in his deposition, taken after his return from England, testifies that the statement of account in the depositions is correct, except as to an item of £200, said to have been deposited to his credit as agent at the banking-house of Messrs. Drummond & Co., in London, on the nineteenth of August, 1878, which alleged credit he denies he received. But his denial is based on the ground that no such credit is contained in *a copy* of his banking account sent to him by his brother and attorney in London, which copy, he says, was made by his said attorney from the original furnished by the Messrs. Drummond & Co.; but the original was not produced, nor was its absence accounted for.

The third assignment of error is, that the appellant was erroneously charged as administrator with a larger sum on account of the sale of the personalty than he actually received. He returned no inventory of the estate or account of sales, but the counsel for the appellees, Mr. Dunlop, who was examined as a witness in the case, testified that after the sale, in a conversation with the appellant, the latter informed him that the sale realized about $2,800, or $820.30 more than the appellant now contends was realized. Nearly two years after this deposition was taken the ap-

pellant was examined, and in his deposition he does not deny that such a conversation occurred, but says: "In the course of conversation with Mr. Dunlop, I may have stated that the sum realized was that much (viz: $2,800), though I have no recollection of doing so." "It would be impossible," he adds, "for me to have made any *formal* statement on the subject, as the accounts of the sale were kept by my counsel, and at this day I do not know *the exact* results of the sale." The counsel who attended the sale also testified in the case, but neither made any allusion to the result thereof. The circuit court upon these facts decreed against the appellant, and we think correctly.

Nor did the circuit court err in refusing to allow the appellant commissions on the total amount of his receipts as administrator. Upon this point the law is well settled. Prior to the passage of the amendatory act of March 1st, 1867, the statute provided, with some exceptions, that a personal representative who failed to lay before the proper commissioner a statement of his receipts for any year for six months after its expiration, should not be entitled to any compensation whatever for his services during that year; and the forfeiture thus prescribed was absolute. But by the statute, as it now is, commissions in such case are not absolutely forfeited, but may be allowed in the discretion of the court; a discretion, it is true, not arbitrary, but to be reasonably exercised upon the circumstances of each case; and when exercised, the action of the court is the subject of review on appeal. Code 1873, ch. 128, sec. 9; *Brent's Adm'r* v. *Clevinger,* 78 Va. 12; 2 Bart. Ch. Pr., sec. 216.

It is incumbent, however, on a delinquent fiduciary, who asks the court to exercise its discretion in his favor, to give a reasonable excuse for his delay, otherwise compensation ought not to be allowed. For the statute is founded in a wise policy, and its design is that a fiduciary who fails

to comply with its requirements shall not be allowed compensation for his services, except only in those cases in which, under the circumstances, it would be manifestly inequitable to exact the forfeiture. *Strother* v. *Hull,* 23 Gratt. 652, 670.

In *Brent's Adm'r* v. *Clevinger, supra,* an executor who failed to comply with the statute within the prescribed time was allowed commissions on his receipts after March 1, 1867, because he had been prevented from settling his accounts by the events of the late war. And so it has been held in similar cases. But the present case is different. Here, there are no extenuating circumstances. The record shows that the appellant qualified as administrator on the twenty-fourth of September, 1879; that he has given no statement of his receipts, and settled no accounts, except in this suit; that he for the first time appeared before the commissioner, who was directed by the decree of September term, 1880, to settle his accounts on the twenty-fourth of February, 1881; that by consent of parties the taking of the accounts was then adjourned to the fourth of March following, on which last mentioned day he again appeared before the commissioner, having with him, as he says, a statement of his account as administrator and the necessary vouchers to support it. But no statement was laid before the commissioner, nor were any steps taken to settle his accounts, because counsel for the distributees insisted upon a settlement of his agency accounts, which he was not then prepared to settle. And although he was in the State, and presumably in good health, and with no apparent or alleged obstacle to the settlement of his accounts for several months thereafter, yet no statement of his receipts was laid before the commissioner for nearly two years after the date of his qualification; and no excuse is now given for his long continued delay, except the demand of the distributees for a settlement of his agency

accounts, above mentioned, and his subsequent absence and illness abroad. These circumstances, as we have already shown, were not sufficient to entitle him to reopen the settled accounts, nor are they sufficient to entitle him to the commissions which were disallowed by the circuit court.

He especially complains that he was not allowed commissions on $2,600, which he deposited in bank, to the credit of the cause, on the sixth of January, 1880, within four months after he qualified as administrator. But the money so deposited .was only a small part of his receipts during that period, and its deposit was not a compliance, in whole or in part, with the statute, which requires a full statement of receipts to be furnished either to the proper commissioner, or to the parties entitled to the money received. And we are, therefore, of opinion, in view of all the circumstances of the case, that the circuit court properly exercised its discretion in refusing to allow commissions even on that sum.

The fifth assignment of error, which is that the appellant was not allowed credit for certain alleged disbursements made by him as agent, is sufficiently disposed of by what has been said in connection with the first. And the sixth and last is chiefly dependent upon the evidence in the case, already in part referred to, and is also not well taken.

This disposes of the case as presented by the appellant. The appellees, however, complain of the decree, and assign errors therein in several particulars. Their first objection is, that the appellant was allowed credit for certain payments made by him as administrator for counsel fees. These payments were, $500 to the firm of Witt & Caskie, on the sixth of January, 1880; $500 to Meade Haskins, on the same day, and $230, about the same time, to Edward H. Moeran, an attorney of New York. Upon the

evidence before him the commissioner credited the administrator with these items, and the circuit court approved his action. The estate was involved in litigation, independent of which the appellant needed, and was entitled to, the services of counsel. And we cannot say that the payments were excessive, under the circumstances, or that they were not properly approved.

It is also complained that the administrator was charged with certain railroad bonds, belonging to the estate, at less than their real value. These bonds were issued by the Port Royal and Augusta Railroad Company, and, with certain shares of stock attached, were sold by the administrator, through a firm of brokers in New York, on the twenty-fourth of December, 1879. The sale was made upon the advice of counsel, and realized thirty-five per cent. of the par value of the bonds. The appellees contend that the bonds were worth at the time at least five per cent. more, and that the administrator is chargeable accordingly. The evidence upon this point is conflicting. The witness Boody, a dealer in railway securities in New York, testifies in accordance with the contention of the appellees. On the the other hand, Moeran, the attorney through whom the sale was effected, testifies that before the sale was made he consulted with several prominent stock brokers in New York as to the value of the bonds, and that the price obtained was "the very highest" that could be obtained in the market at the time. It is conceded that the price considerably advanced soon afterwards. We think the administrator was properly chargeable with the amount he actually received, and no more.

The appellees, however, further contend that the necessities of the estate required the sale of only a portion of the bonds, and therefore that as to so many of the bonds as were not necessarily sold, the administrator ought to be charged with their enhanced value.

It is true that it is the duty of a personal representative,

under ordinary circumstances, not to sell, but to collect the debts due the estate. But a sale required by the interests of the estate, or one made by the executor or administrator acting in the exercise of his best judgment, and with ordinary prudence, and in the honest belief that the interests of the estate required it, will be approved when these facts clearly appear. *Pinckard* v. *Woods*, 8 Gratt. 140; *Elliott* v. *Carter*, 9 Id. 541; *Watkins* v. *Stewart*, 78 Va. 311; *Wayland* v. *Crank's Ex'or*, 79 Id. 602.

Now, in the present case, it is conceded that there were debts due by the estate, and that in order to provide for the payment of those debts, a sale of at least a part of the bonds in question was necessary. It is also true that the bonds were issued by a railroad company, a foreign corporation, whose property was not within the State of Virginia; and it is therefore fair to presume that the collection of the bonds, if due, (as to which the record is silent) would have been attended with delay and expense. The bonds, moreover, were of fluctuating value, and their sale was advised by counsel. The record shows entire good faith on the part of the administrator, and that he not only acted in accordance with the advice of counsel and business men, with whom he consulted in New York and Richmond, but for what at the time he supposed to be the best interests of the estate. He ought not, therefore, to be held liable for more than he received.

These are the principal questions raised by the appellees, and the only ones we deem it necessary to consider specially. The remaining assignments of error involve, for the most part, questions of fact, which were passed on by the commissioner and the lower court, and as to which it is sufficient to say they are not well taken. The decree is affirmed.

DECREE AFFIRMED.