Statement.

## Richmond

### J. B. KING & CO. v. C. W. HANCOCK & SONS.

#### March 13, 1913.

1. DEPOSITIONS—*Notice—Service by Mail—Sufficiency.*—No particular mode of service of a notice to take depositions is prescribed by statute in this State, but section 3207 of the Code prescribes the method of service of a notice where no particular mode of service is prescribed, and unless this method of service has been waived, a service upon a party or his counsel by sending the notice through the mail is not sufficient, even though received.

2. DEPOSITIONS—*Notice—Sufficiency—Waiver.*—Where depositions taken in a cause were not filed with the clerk, and it was not made known to the defendants, or their counsel, that they had been taken pursuant to the notice sent by mail until the cause has been called for trial and the jury selected and sworn, it is not too late then to object to the sufficiency of the notice under which they were taken.

3. EVIDENCE—*Burden of Proof—Case at Bar—Harmless Error.*—In an action to recover the price of goods which the defendant refused to acecpt on the ground that they were in a damaged condition when received, it is not error to instruct the jury that the burden is on the plaintiff to show that the goods in question were delivered in an undamaged condition; but, in the case at bar, even if the court erred in its instruction as to the burden of proof, it was harmless error, since the defendant proved that the goods were damaged when received, and the evidence leaves no doubt as to that fact; there being no other testimony in the case except that of the defendant and his witnesses.

4. INSTRUCTIONS—*Ignoring Issues.*—It is not error to refuse an instruction which ignores the defense of a breach of warranty set up in defendant's special plea in the nature of a plea of set-off, upon which issue was joined.

Error to a judgment of the Circuit Court of the city of Lynchburg in an action of assumpsit. Judgment for the defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Kenneth S. Jones,* for the plaintiff in error.

*Harrison & Long,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

This action in assumpsit was instituted by plaintiff in error, a New York corporation, to recover $420, the price of 600 bags of a plaster known as King's Ready Finish, sold by it through Jones & Co., Inc., of Norfolk, Va., to the defendants, C. W. Hancock & Sons, of Lynchburg, Va., to be used by them in the construction of the Lynchburg high school building, upon which they were then engaged as general contractors. The plaster was ordered January 18, 1911, was shipped January 25, 1911, and was received by the defendants at Lynchburg in due time, but upon a test being made by them of the plaster, it was found to be unsatisfactory and unfit for the uses for which it had been ordered, and complaint thereof was promptly made to the plaintiff, both by telegram and letter addressed to its Norfolk office. In reply to this notice, the plaintiff, through Jones & Co., its southern managers, who could have known nothing about the shipment, since it was not made under their supervision, but was shipped from New York, insisted that the plaster shipped to the defendants had been properly compounded, etc., and a Mr. Brinkerhoff from the New York office, representing the plaintiff, came to Lynchburg to adjust the trouble, but failed to satisfy the defendants or the architect under whose supervision they were constructing the school building. Whereupon, the architect required the defendants to discontinue the use of said plaster finish, and to use that prescribed in the specifications, and his notice to the defendants making this require-

ment was communicated to the plaintiff at its Norfolk office by a letter dated February 14, 1911, in which it was stated:

"You are hereby notified that we will require you to white coat the high school with material according to the specifications.

"The King's Ready Finish is damaged, large flakes of some substance being mixed with the material, which renders it unsuitable.

"In addition to this, that already on the top story has not even begun to get hard, and if it does not eventually do so, will have to be removed.

"The material also appears to blister and show other signs of not being up to the standard of the material originally called for."

In the same letter the defendants notified the plaintiff that the rejected plaster was held subject to its order.

The contract under which the defendants were working when this purchase of 600 bags of Ready Finish was made specified that all plastering in the high school building except the finishing coat should be done with U. S. Gypsum Company's Ivory, and that the finishing coat should be composed of hydrated lime and Keene's cement, in equal parts; but according to the defendants' contention, on the representations of the plaintiff that the use of its Ready Finish would insure superior results, with less inconvenience and no greater expense, they, with the consent of the supervising architect, purchased the 600 bags of Ready Finish in question, to be used instead of the finish specified in the contract.

In a letter of date February 16, 1911, the defendants wrote further to the agents of plaintiff at Norfolk as follows: "Inasmuch as you and all parties concerned admit that the finish is damaged, there is no use considering further its use on this job, as the architects have rejected

the same, and there is no use trying to go behind this decision. Since the material is damaged, there is no way of telling which is damaged and which is not, so it is unsuitable for further use on this job. Now, some of the black specks may have gotten knocked in the buckets, but this does not account for the foreign material that was sieved out of the bags, and a bag of these sievings were taken to New York by your Mr. Brinkerhoff, and we would like to ask what conclusion you came to after examining same.

"The statement made that this material was placed in a damp cellar was not true, and this can be proven, as the concrete floor has been down some three or four months and there are no damp places about this room. Furthermore, all of the plaster used on this job was stored there and no evidence was detected of its dampness, and furthermore, the finishing material we are using now is stored in this same room and no evidence has been shown to indicate any dampness.

"Now it is very evident to us, and we can establish same, that this material was damaged either before leaving the factory or in transit to Lynchburg. We don't under any condition take it for granted that this material was shipped from the factory undamaged. We don't think that your factory, or any other factory, turns out absolutely good material all the time. And, besides, if your company loaded your material in a leaky or damaged car, it is no fault of ours. So we do not consider it any affair of ours to establish where the damage occurred."

Replying to this letter the plaintiff, from its Norfolk office, admitted that the plaster was in bad condition, saying: "Relative to the Ready Finish being damaged, no one can deny this, as some of the bags contain lumps as big as your fist, and are stained"; but insisted that the goods had left the factory in New York in good condition, and declared its purpose to look to the defendants for a settlement.

A short time after this correspondence took place a portion of the plaster in question was further damaged by water having been turned into the cellar where it was stored, without fault of the defendants, of which they informed the plaintiff at its Norfolk office by letter of date February 27, 1911; but as this incident has no bearing on any question involved in this cause, the plaster having already been condemned and was being held at the risk of the plaintiff, further reference to it is unnecessary.

In the following May, the defendants, as they claim, in order to give the plaintiff the opportunity to show what it could do with its Ready Finish, agreed that it might plaster the high school auditorium and use its finish in doing so. When this work was about to be begun, a contract was entered into with Jones & Co., as one of the parties, instead of with the plaintiff, but with the understanding on the part of the defendants that Jones & Co. were the plaintiff's agents and representatives, which appears to be the fact from correspondence between the parties before and after the date of the contract.

Under this contract the defendants, at the plaintiff's request, made large payments on its account, for which they have not been reimbursed, but their claim on account of these payments has no connection with this suit, and the contract has no relevancy, except in so far as the work done under it with the plaster in question tends to show the quality of the plaster. This work, it appears, in which 154 bags of the Ready Finish plaster were used, was accepted as satisfactory, but the expense of doing it was excessive and greater than the value of the plaster.

The defendants having declined to pay for the plaster, this suit was brought on the 28th day of October, 1911, and on the 11th day of December following, which was the first day of the next term of the court, judgment by default was rendered against the defendants for the amount

in the plaintiff's declaration demanded, but on the next day the defendants appeared and pleaded, the judgment entered the preceding day was set aside and the case continued to the next term.

At the next term, in February, 1912, the defendants filed an additional plea in the nature of a plea of set-off, and issue being joined the case was tried by a jury and a verdict and judgment rendered for the defendants, to which judgment the plaintiff obtained this writ of error.

The first assignment of error calls in question the ruling of the trial court excluding certain depositions offered in evidence by the plaintiff, which were excluded on the ground that reasonable notice of the taking of the depositions had not been served according to law.

It appears that the notice in question, dated February 5, 1912, and designating February 10, 1912, between the hours of 10 o'clock A. M. and 2 o'clock P. M., at the plaintiff's office, 17 State street, New York, as the time and place, was attached to the depositions, but there was no return on the notice to show how or when it had been served, or that it had been served at all; and objection being made to the introduction of the depositions on the ground that they had been taken without legal notice, Mr. Jones, of counsel for the plaintiff, testified that he had sent a copy of the notice to each of the defendants, and to their counsel at Lynchburg, by registered mail, delivered at the post-office about 4:30 P. M. on the 5th of February, 1912, and that in due course of mail it should have been received at Lynchburg by the first delivery the next morning. C. W. Hancock, one of the defendants, was also called on to testify for the plaintiff, and admitted that he received the copy of the notice addressed to him, and that the other copies were received at the defendants' office, and that the notices were delivered to their counsel, but it does not appear that the other defendants actually received the no-

tices addressed to them.   The depositions were at first admitted, and were read to the jury over the objection of the defendants, but were afterwards, on the defendants' motion, excluded on the ground, as stated, that the notice had not been given according to law.

In some jurisdictions, as appears from cases cited by counsel for the plaintiff in this case, it is recognized as sufficient if notice to take depositions be sent to the adverse party by mail, provided the time and place designated for the taking of the depositions affords a reasonable time in which the parties so notified may appear at the taking of the depositions, but this view as to what is a sufficient service of the notice in such a case has found no sanction in any case decided by this court.   The cases of *McCandlish* v. *Edloe,* 3 Gratt (44 Va.) 330, and *Trevelyan* v. *Lofft,* 83 Va. 141, 1 S. E. 901, cited as supporting the plaintiff's contention in this case, do not at all serve that purpose.

In the first of these cases all that was decided is that a commissioner, after having given a general notice of his proceedings under an order for accounts, might take depositions under the general notice without giving a notice of the taking of the depositions; and in the second-named case, the notice was given in Richmond on the 7th of June, 1881, to take depositions in London, Eng., on the 4th of July following, the notice being served by posting a copy thereof at the front door of the appellant's residence, he and his family being absent from home, and also by delivering a copy of the notice to his counsel in Richmond, and in addition to this, a copy was mailed to appellant in England, and appeared to have been received by him. Therefore the only question for the determination of the court was whether sufficient time was allowed, and the court held that in view of the evidence in respect to communication and the convenience of travel between this country and England, the notice was sufficient in point of

time; but in so holding no importance appears to have
been attached to the fact that a copy of the notice was sent
by mail, as no allusion was made to it except to state it.
Nor does it appear from the case, as reported, that the
legality of the service of the notice by posting the same on
the front door of appellant's usual place of abode was
called in question.

Our statute, now 3362 of the Code, 1904, prescribes that
"reasonable notice shall be given to the adverse party of
the time and place of taking every deposition"; but no
particular mode of service is by that section prescribed.
Sec. 3207, however, does prescribe the mode of service of
a notice and its provisions are that a notice "may be served
by delivering a copy in writing to the party in person, or
if he be not found at his usual place of abode, by deliver-
ing such copy and giving information of its purport to his
wife, or any person found there who is a member of his
family, and above the age of sixteen years; or, if neither
he nor his wife, nor any such person be found there, by
leaving such copy posted at the front door of his place of
abode"; and the mode of service is required to be shown
by the return of the officer making service, or, if the service
is made by some other person, by his return verified by
affidavit; and under certain conditions the statute (section
3363) provides that the service of notice to take deposi-
tions may be upon the counsel for the adverse party who
is a non-resident of Virginia.

The service of notice upon the adverse party to take
depositions in the mode prescribed by the statute may, and
often is, in the practice obtaining in this State and else-
where, be waived, but whether or not there has been a
waiver must depend upon the facts and circumstances of
the case.

A deposition taken pursuant to notice served on the at-
torney of a party who resides in the State at the time of

such service cannot be used as evidence in the absence of a waiver of the lack of service, and mere silence of the party after knowledge of the service, and of his attorney, does not constitute waiver." *Webb* v. *Ritter,* 60 W. Va. 193, 54 S. E. 484.

In the case just cited the deposition was taken November 22, 1902, in the city of San Francisco, was filed with the clerk of the trial court in West Virginia, December 5, 1902, and was not used until March, 1904, when it was stated to the court by counsel for the defendant that he knew of the filing of the deposition soon after it was taken. In the opinion of the court the view was taken that though counsel for the defendant, or even the defendant himself, knew of the filing of the deposition soon after taken, and there was no express dissent as to the manner of the service of notice, a waiver of notice could not be implied from this omission; that the departure from the prescribed rule as to the service of notice to take depositions, attempted in the case, would be not only inconvenient and a source of annoyance, but dangerous to litigants; "and it is deemed to be safer and better to adhere to the statutory rule, when it has not been dispensed with by agreement or conduct amounting to an estoppel." *Cahill* v. *Pintony,* 4 Munf. (18 Va.) 371; *Unis* v. *Charlton,* 12 Gratt. (54 Va.) 484.

In the case at bar the depositions, it appears, were not filed with the clerk, and that they had been taken pursuant to the notice sent by mail was not made known to the defendants or their counsel until the cause had been called for trial and the jury selected and sworn. In these circumstances the argument of counsel and the authorities cited to support the contention that as defendants "made no objection to the form of the transmission of notice until the trial had commenced, the objection came too late," have no application to this case.

As well said in the argument of the case here, the

methods of serving notice authorized by law are certain and amply sufficient for the purpose, making it unnecessary in any case to resort to irregular methods of service, and the recognition and approval of such methods would only tend to produce uncertainty and add new elements of controversy in a matter of critical importance.

We are of opinion that there is no error in the ruling of the trial court excluding the depositions in question.

The second and third assignments of error relate to the rulings of the court in giving and refusing certain instructions, and may be considered together.

The court gave three instructions, as follows:

"1. The court instructs the jury that the only question to be considered by the jury is, was the sale of the goods in controversy made, and did J. B. King & Company fulfill their contract.

"That J. B. King & Company fulfilled their contract if the goods that were ordered were shipped and delivered in undamaged condition to the defendants, and that the burden of proof is on the plaintiff to show that the specific goods ordered by the defendants were not damaged before they were shipped.

"2. The court instructs the jury that if the defendants order a specific article, they are liable for the purchase price if the said goods are delivered to them in an undamaged condition.

"3. The court instructs the jury that the burden is on the plaintiff to show that the goods in question were delivered in an undamaged condition, and if they believe from the evidence that they were not delivered in such condition, they must find for the defendants."

No exception is taken to instruction No. 2, and this instruction states only in another form the proposition of law propounded in the first part of the first instruction, so that the objection to the instructions Nos. 1 and 3 proceed

upon the theory that "the burden of proof was first upon the defendants to show that the goods in question were, in reality, damaged, before there could be any burden on the plaintiff to show when the damage occurred. * * * * The time of the occurrence of the damage was not under consideration until it was established that the goods were damaged. Hence, the court, in refusing to put the burden on the defendants to show that the goods were damaged, assumed that they were damaged (which was a question for the jury) and put the burden on the plaintiff to show when the damage occurred"; and further, that instead of the burden being on the plaintiff to show that the goods were not damaged before they were shipped, or were delivered in an undamaged condition, the burden was on the defendants to show that the goods were damaged when received, and the court erred in refusing to instruct the jury, as requested by the plaintiff, that the burden of proof was on the defendants to show that the goods were damaged when received. No authority is cited in support of the proposition of law contained in this contention, and we have to confess our inability to see any force in it. But if there had been error in the court's instructions as to the burden of proof, it would have been harmless, since the defendants proved that the goods were damaged when received, and the evidence leaves no doubt as to that fact, there being no testimony in the case except their own and that of their witnesses.

The refusal of the court to give, at the request of the plaintiff, an instruction to the effect that if the jury believed from the evidence that the defendants received the plaster and exercised acts of ownership over same, or allowed any parties to use said plaster, or part thereof, on their contract, or for their use, then they should find that the defendants had accepted the goods and were liable for the purchase price of the shipment, is also assigned as error.

All that appears in the record with respect to the facts stated in this instruction is that after the defendants had refused to use the goods, they, at the request of the plaintiff's agents, Jones and Company, agreed that Jones and Company, in order to show the quality of the goods, might use them in plastering the high school auditorium, and one hundred and fifty-four bags were so used, and the work was accepted, but the cost of the work was so excessive as to make the use of the plaster unprofitable and impracticable. It will not do for plaintiff to say that the plaster was not warranted, and the representations in regard to it made from the New York office and by Jones and Company from Norfolk, were mere expressions of opinion. From circulars sent out by the plaintiff and received by the defendants, the correspondence between the parties and the testimony of the witnesses introduced at the trial of this cause, the plaintiff fully understood the necessities of the defendants with respect to the plaster finish in the high school building, called for in the architect's specifications, and gave abundant assurances that its Ready Finish would produce a result as good as the finish specified; but according to the evidence, the goods ordered for that purpose and received were not only inferior to the sample by which they were ordered, but were worthless for the purpose in view when ordered.

The instruction also ignored the defense of a breach of warranty set up in defendants' special plea in the nature of a plea of set-off, upon which the plaintiff took issue, and for this additional reason it was rightly refused.

The remaining assignment of error is to the refusal of the court to set aside the verdict as contrary to the law and the evidence.

A full statement of the case has already been made above, and with the discussion of the facts which the evidence tended to prove in considering the other errors as-

signed, it becomes unnecessary to elaborate on this assignment. There was no conflict of evidence. C. W. Hancock, one of the defendants, and all other witnesses called by the defendants, testified that the Ready Finish delivered by the plaintiff to the defendants was in bad condition and worthless for the purpose for which it was bought, and that the expense incurred on account of it was greater than its value. Therefore, upon the facts proved, no other verdict could have been found than that rendered by the jury for the defendants.

The judgment of the circuit court is affirmed.

*Affirmed.*